LOUIS M. JACKSON, ET UX. *v.* H. WILLIAM BIRGFELD, JR., ET AL.
ET AL.

[No. 57, October Term, 1947.]

*Decided January 16, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*John E. Oxley* and *R. Edwin Brown* for the appellants.

Joseph B. Simpson, Jr., with whom were Simpson & Simpson, Frederick Stohlman and George Cassidy, Jr., on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This action of assumpsit was brought by Louis M. Jackson and Fannie L. Jackson, his wife, lessors, against H. William Birgfeld, Jr., and Douglas Birgfeld, lessees, to recover $1,200 for the rent for a cannery building and its equipment in Bethesda.

The lease demises "premises No. 4717 Miller Avenue, Bethesda, Maryland, consisting of a one-story building and including all equipment therein contained," for the term of five years from May 1, 1946, to April 30, 1951, for the sum of $36,000, payable in monthly installments of $600 each. The lease gives lessees the right to renew the lease for an additional term of five years and also an option to purchase the property. Lessees refused to pay the rent for the months of October and November, 1946, on the ground that prior to the time lessors had excavated the ground in the rear of the building to a depth of several feet. The Court ruled that the excavation constituted a partial eviction, and entered judgment for defendants. From that judgment plaintiffs appealed to this Court.

The word "premises" has a varied meaning depending upon its context and the object to which it is applied. In the instant case the lease does not describe the property as a one-story building and premises; it demises "premises * * * consisting of a one-story building." The fact that it does not call for anything more, except the equipment in the building, is in itself quite significant. In determining what constitutes the "premises" intended by the parties to a written instrument, the Court, after considering the language of the instrument itself, considers the nature of the building and surounding property and the general purposes of the parties. Jacobs Concessions v. United States Fidelity & Guaranty Co., 181 Md. 113, 28 A. 858; De Prizio v. F. W. Woolworth Co., 291

Mass. 143, 196 N. E. 910. The building in this case was leased for the purpose of canning chili con carne. Later, on account of meat shortage, lessees changed to chow mein. Lessees do not conduct a retail business. After the food is canned it is delivered by trucks to hotels and restaurants. In the operation of the business they purchase meat by the barrel, vinegar by the barrel, beans in 100-pound bags, sacks of flour, large crates of celery, boxes of onions, and canned goods. Motor trucks use the driveway to haul the supplies to the side door, which is twice as wide as the front door. The right to use the driveway is appurtenant to the building. There can also be no doubt that lessees are entitled to access to the fuel oil tank near the rear of the building, which can be reached by a hose attached to an oil truck. It is a settled principle that a deed, in the absence of any language indicating a contrary intention of the grantor, passes to the grantee everything that is properly appurtenant to the land conveyed, *i. e.,* everything essential or reasonably necessary to the full beneficial use and enjoyment of the property. *Sheets v. Selden,* 2 Wall. 177, 17 L. Ed. 822, 826. This principle is equally applicable to a lease of real property.

It is also an established rule that a description of premises in a lease of a building by the street number includes only so much of the lot on which the building stands as is necessary to the complete enjoyment of the building for the purpose for which it was leased. *Houghton v. Moore,* 141 Mass. 437, 6 N. E. 517; *M. M. Rowe Co. v. Wallerstein,* 145 Va. 191, 133 S. E. 669; *Kuschinsky v. Flanigan,* 170 Mich. 245, 136 N. W. 362, 41 L. R. A., N. S., 430, Ann. Cas. 1914A, 1228; *Ravet v. Garelick,* 221 Mich. 70, 190 N. W. 637, 28 *A. L. R.* 1331. Whether land in the rear of a building is necessary to its complete enjoyment is a question for the jury depending upon the facts of each particular case. Among the questions which may have an important bearing in determining whether vacant land in the rear of a building is a part of the premises are: (1) whether the land is situated in a

thickly settled community; (2) whether it is enclosed by a fence; (3) whether the business conducted on the premises is such as requires its use for storage, shipment, or other purposes; (4) whether its abuts on a street; and (5) whether there are adjoining landowners or tenants who have a special use for it. *H. B. Earhart, Inc. v. Haw,* 251 Mich. 11, 231 N. W. 103.

Here the building, which stands 20 feet back of the building line of Miller Avenue, is 30 feet wide and 50 feet long. It is located on lot 10 in the subdivision of lots known as J. H. Miller's Addition to Bethesda. As this lot is 90 feet long, the rear wall of the building is 20 feet south of the north line of the lot. Along the west side of the building there is a concrete driveway 12 feet wide. This runs on the east side of lot 8. Lessees argue that, although the lease does not mention the land in the rear of the building expressly, it was the intention of the parties that the lease should demise all of lot 10 and all that portion of lot 8 which lies north of the driveway. We cannot accept that contention. First, the lease makes no reference to the plat of Miller's Addition, which was made more than 20 years ago, or to any lot on the plat. Second, there has never been any fence, or other visible boundary line, or even a stake showing the north line of lots 10 and 8. Third, there is no door in the rear of the building, and there is no shed or any other improvement on the land.

Lessees have failed to show that the land north of the cannery and driveway is necessary to the complete enjoyment of the cannery. Lessees testified that they receive approximately five barrels of meat daily, but that empty barrels are taken away nearly every day. They purchase about two barrels of vinegar a week, and the empty barrels are called for once every two weeks; hence they rarely have more than four vinegar barrels at one time. At times they receive more than two dozen crates of celery daily, and they store the empty crates in the building, but sell them promptly. Thus, they have seldom had on hand more than a half dozen meat barrels, four

vinegar barrels, and 100 celery crates. It was pointed out that it would be inconvenient to carry the barrels and crates to the land in the rear of the building, and then carry them back when the truck arrives. Often the empty receptacles are put on the driveway where they were readily available for loading. Ralph R. Sachs, a lawyer, who resides in an apartment overlooking the property, testified in the Court below that he never saw any barrels or boxes back of the building. In fact, lessees admitted that their principal use for the land was occasionally to burn some worthless crates or boxes there. It is unreasonable to presume that premises in the business section of Bethesda, a suburb of Washington, were leased as a place for the burning of rubbish. Real estate in the metropolitan area surrounding the District of Columbia has considerable value, as evidenced by the lease before us fixing the rent for a one-story building and its equipment at $600 per month.

It was urged that lessors had excavated within three feet of the cannery, and if a new building is erected within three feet of the cannery it will obstruct the light and air to the rear windows, and thereby constitute a partial eviction. But on this appeal we are not required to decide how far away another structure must be built to avoid obstructing the light and air to the rear windows of the cannery. Jackson testified that he had informed Douglas Birgfeld that he had intended to erect a new building and had showed him the plans. Lessees now claim that, under regulations of the United States Department of Agriculture, nothing shall be built within 15 feet of a government-inspected meat cannery. In any event, whatever may have been lessors' building plans, nothing has been erected so far. Lessees have continuously occupied the premises and carried on the business without interruption since the execution of the lease in May, 1946. Justice Holmes stated the law on this subject as follows: "Outside the rule *de minimis*, the degree of interference with the use and enjoyment of the premises is important only in the case of acts not physi-

cally excluding the tenant, but alleged to have an equally serious practical effect, just as the intent is important only in the case of acts not necessarily amounting to an entry and deforcement of the tenant. * * * The inquiry is for the purpose of settling whether the landlord's acts had the alleged effect; that is, whether the tenant is evicted from any portion of the land." *Smith v. McEnany,* 170 Mass. 26, 48 N. E. 781, 64 Am. St. Rep. 272.

Our rules now provide that when any proceeding at law has been tried by the court upon the facts, the court shall direct such judgment to be entered as it thinks right upon the evidence and the law; and an appeal from the judgment, if allowed by law, may be taken according to the practice in equity. On appeal the Court of Appeals may review the case on both the law and the evidence, and may affirm, reverse and modify the judgment or remand the case as on appeals from equity. Rules of Practice and Procedure, Part 3, subd. 3. Trial Rule 9 (c). Lessees testified that lessors, while making their excavation, cracked the pipe which drains the waste water from the cannery, and sewage from the pipe ran into a pool of water which brought a complaint from the government inspector. A partial eviction means more than a mere trespass. It is something of a permanent character done by the landlord with the intention of depriving the tenant of a portion of the premises. *Upton v. Townsend,* 84 Eng. C. L. 30; *Hayner v. Smith,* 63 Ill. 430, 14 Am. Rep. 124, 128. Inasmuch as lessees have not been deprived of the enjoyment of the premises, we must reverse the judgment of the Court below and enter judgment for the amount of rent sued for.

*Judgment reversed, and judgment entered for the sum of $1,287 in favor of appellants against appellees, with costs.*