KATZ ET VIR *v.* WILLIAMS ET AL.

[No. 334, September Term, 1964.]

356

*Decided June 29, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-
BURY, SYBERT and BARNES, JJ.

*Alfred Gilbert Scholle,* with whom were *Arthur L. Isaacs,
Norman H. Katz* and *Scholle & Isaacs* on the brief, for the ap-
pellants.

*Jerome Stanbury,* with whom was *Hervey G. Machen* on the
brief, for the appellees.

HORNEY, J., delivered the opinion of the Court.

In this proceeding for declaratory relief brought by tenants
against landlords for a determination of questions concerning
the meaning and effect of certain provisions in a lease and con-
tract of sale, and a declaration of the rights of the parties there-
under, the principal question is whether the chancellor erred in
ruling that the tenants had a right to make certain alterations
and repairs to the leased premises despite the refusal of the
landlords to grant permission therefor. An additional question

concerns the power and authority of the chancellor to require the landlords to consent to the request of the tenants to remove the name of one of the officers to whom an alcoholic beverage license was issued for the use of a corporation and to substitute the names of the respective wives of the other two officers. The landlords, William S. Katz and Sarah Katz, his wife, are the appellants, and the tenants, Gordon B. Williams, Ralph Hofinger and Oliver F. Green, as well as a corporation, known as The Brass Lantern, are the appellees.

The landlords sold their restaurant and tavern business to the tenants as individuals and as incorporators of a corporation to be formed. The contract of sale, besides providing for the transfer of the alcoholic beverage license, provided that the landlords would lease the building in which the business was conducted to the tenants. The contract of sale (the pertinent part of which was incorporated by reference in the subsequently executed bill of sale) further provided that the tenants as lessees should have the right to transfer, sell or assign the lease, business and license to anyone acquiring all of the assets of the business and agreeing to be bound by the terms of the contract in the event the landlords declined to exercise a prior option they had to purchase such assets at the price offered therefor by the prospective purchaser.

The lease, for a term of five years with an option to renew for three additional five year periods, provided that the tenants would "keep the premises in good order, and surrender the peaceful and quiet possession of the same at the end of the said term in as good condition as when received (the natural wear and decay of the property and unavoidable accidents excepted)." Another covenant in the lease provided "that whatever alterations or repairs the * * * tenants shall be permitted to make shall be done at their own expense." It is these two provisions of the lease and that portion of the contract of sale relating to the transfer of the alcoholic beverage license with which we are concerned on this appeal.

Some three years later, the tenants made a "request for permission to make alterations and repairs" on the demised premises. The request involved the installation of air conditioning, alterations in the bar and dining areas, changes in the package

store, the removal of a bandstand, and such other repairs as might be necessary to "keep the premises in good order." Although the tenants agreed to bear the entire cost of the alterations, to indemnify the landlords for any structural damage that might result, to leave all improvements on the premises at the expiration of the term and to pay any increase in property taxes resulting from a higher assessment, the landlords refused to allow the alterations to be made. Whereupon, the tenants filed a bill for declaratory judgment seeking a construction of that portion of the lease providing "that whatever alterations and repairs the * * * tenants shall be permitted to make shall be done at their own expense." Upon the filing of an answer to the bill, the tenants moved for summary judgment which in turn was opposed by the landlords.

Although the motion for summary judgment was denied because there appeared to be a genuine dispute as to what alterations were reasonable and necessary, the chancellor, anticipating that the parties would reach an agreement, made an interpretation of the rights of the parties under that provision of the lease as to which there was a controversy. With respect to what the lease meant, the chancellor, because he was of the opinion (an incorrect one[1]) that a landlord could not arbitrarily and unreasonably refuse to consent to the subletting or assignment of a lease requiring permission of the landlord to first be obtained, concluded that the same rule was applicable to a request to make alterations and repairs which the tenants considered necessary and proper to conduct the business profitably.

After an unexplained delay of approximately three years the tenants renewed their request for permission to make some of the alterations and repairs previously requested, and certain additional changes as well. At the same time the tenants requested the landlords to permit the tenants to remove the name of one of them on the alcoholic beverage license and to substitute therefor the names of the respective wives of the other two tenants. These requests were also denied.

---

1. See Jacobs v. Klawans, 225 Md. 147, where it was held that the lessor, in a lease prohibiting assignment or subletting without his consent, could arbitrarily and unreasonably withhold consent if the covenant of prohibition was without qualification.

In the decree passed after the hearing that ensued on the bill for a declaratory judgment, it was ordered that whenever any alterations and repairs are contemplated by the tenants they should make a request therefor in writing and that the landlords could not arbitrarily and unreasonably withhold written consent. It was further ordered that the alterations sought in the second written request for permission to make certain alterations previously requested, as well as such additional changes as were then requested, should be made. And besides ordering an additional alteration requested at the hearing to be made, the decree ordered the landlords to sign the necessary consent for the transfer of the alcoholic beverage license.

At the hearing, aside from specifically objecting to the payment of more taxes, to the removal of the steel reinforced concrete slabs under or through which radiant heat was conducted and the installation of a neon sign on the roof, one of the landlords (William S. Katz) denied that he sought a forfeiture of the lease and stated that he did not want the building, which had been leased "as it is," touched on the inside, that he had leased the place the way it was and wanted to keep it that way because that was the way he liked it and that the tenants knew what they were to get when they executed the lease. As reasons for not wanting the name of Oliver F. Green taken off of the license, the witness stated that he was "the main one that has the money * * * in case anything happens." But regardless of the reasons assigned by the landlords for refusing to consent to the alterations requested and a change in the names of the licensees, we think the chancellor was in error when he ordered the landlords to comply with the demands of the tenants.

(i)

The principal question is whether or not it was within the discretion of the landlords to withhold permission to make the alterations requested by the tenants. As to this, the landlords contend that the covenant in the lease stating "that whatever alterations or repairs the * * * tenants shall be permitted to make" vests in the landlords the right to refuse permission to make such alterations and that they may refuse a request therefor even though permission may have been arbitrarily or un-

reasonably denied. They further contend that to rule otherwise would result in a rewriting of the terms of the lease. The tenants, on the other hand, contend that as the lease does not expressly state that permission may be arbitrarily and unreasonably withheld, it requires a construction that permission would not arbitrarily and unreasonably be withheld because the restrictive words are nothing more than a reiteration of the common law rule that a tenant will not commit waste. The tenants further contend that inasmuch as the alterations they sought to make were not material or major ones and would not have changed the character of the building they have the right to make such changes in the premises as are necessary and proper for the efficient running of the restaurant and tavern business as contemplated by the terms of the lease.

Since the two provisions of the lease which are the subject of this controversy are apparently not harmonious, the rules governing the construction of contracts require that effect be given to both, if it is possible to reconcile them by a reasonable interpretation. *Gomprecht v. Dumleer Co.*, 164 Md. 653, 165 Atl. 710 (1933). While it might appear from a cursory reading of the lease that both clauses relate to repairs and are inconsistent in that one requires the consent of the landlords and the other does not, we think a reasonable interpretation of the lease as a whole compels a conclusion that the covenant "to keep the premises in good order" relates to ordinary repairs while the clause requiring the landlords' permission relates to extraordinary repairs. A covenant to surrender the premises in as good condition as when received is merely a covenant to repair (*i.e.*, not to commit waste) and when it is coupled, as it was here, with an exception of ordinary wear, it states the common law duty to keep the building windtight and watertight. See 1 *American Law of Property*, §§ 3.78 and 3.79. See also Jackson, *Law of Repairs and Improvements*, Ch. XV. The covenant requiring the tenants to keep the premises in good order did no more than require the making of ordinary repairs, for which consent of the landlords was not required. On the other hand, the use of the word "repairs" in connection with the word "alterations," which could not be made without the permission of the landlords, denotes that repairs other than

ordinary repairs were meant. We think therefore a reasonable interpretation of the lease as a whole permits a conclusion that the words "alterations or repairs" contemplated extraordinary repairs in the nature of improvements having no relationship to keeping the premises windtight and watertight, and would therefore require the permission of the landlords before such alterations and improvements could be made.

As the chancellor found, and as the parties apparently concede, the covenant in the lease relating to alterations or repairs required the oral, if not the written, consent of the landlords before any changes in the building could be made. In any case, the action of the tenants in seeking permission was at least an indication that they interpreted the lease as requiring consent on the part of the landlords. See *Standard Industries v. Alexander Smith, Inc.*, 214 Md. 214, 226, 133 A. 2d 460 (1957). The chancellor, however, by interpreting the lease as meaning that consent could not arbitrarily and unreasonably be withheld, when its plain language indicated the contrary, thereby in effect rewrote the agreement in a manner not contemplated by the lease. In *Jacobs v. Klawans*, 225 Md. 147, 169 A. 2d 677 (1961), where we were concerned with a lease prohibiting assignment or subletting without the consent of the landlord, it was held that the landlord, in the absence of qualifying terms to the contrary, had a right to refuse permission even though the refusal may have been arbitrarily and unreasonably withheld. We see no reason why the same rule should not be applied in the case at bar to a lease prohibiting the making of alterations or improvements without the permission of the landlords, and we so hold. The withholding of permission in the absence of delimiting conditions, even though based on arbitrary and unreasonable motives, has been held to be discretionary with the landlord. See *Wall Nut Products, Inc. v. Radar Central Corp.*, 244 N. Y. S. 2d 827 (1963) and *Sanka Coffee Corp. v. Ramcadis Realty Corp.*, 242 N. Y. S. 630 (1930).

(ii)

The second question is whether it was error for the chancellor to direct the landlords to consent to the transfer of the alcoholic beverage license. We think it was.

Although the landlords agreed that the tenants should have the right to transfer the alcoholic beverage license to anyone acquiring all of the assets of the business should the landlords decline to exercise their option to purchase such assets at the price offered by a prospective purchaser, there was no provision for the removal of one of the tenants as a licensee and the substitution therefor of other licensees. The landlords contend, and we agree, that in the absence of an agreement to the contrary, they have a right under the circumstances to exercise a measure of control over the transfer of the license so long as it remains in the names of the tenants under the lease. While it appears that one of the tenants wants to terminate his participation in the restaurant and tavern business, it was not shown that the proposed transferees of the license (either with or without their respective husbands) were to acquire all of the assets of the business, nor does it appear that the landlords were ever given an opportunity to exercise their option to purchase the business at a contemplated sales price. On the contrary, the record shows that the landlords desire to retain whatever liability is imposed on the licensee whose name is sought to be removed from the license. Regardless of the fact that the responsibility of that licensee (who is still responsible under the lease) might not abate under the facts of this case as a result of a transfer of the license, and despite the ruling of the Attorney General of Maryland that a substitution of individuals authorized to act for a corporation is not in effect a transfer of the alcoholic beverage license in the real sense, we think the landlords had a right to refuse to assent to the removal of the name of one of the licensees and the substitution of the names of other persons therefor, and we so hold.

Since no question was raised by the landlords one way or the other, and the tenants did not cross-appeal, it is not intended that the reversal of the decree should in any way affect that part thereof requiring the landlords to repair the roof of the building as they covenanted to do under the lease.

*Except as otherwise stated in the opinion, the decree is reversed; the appellees to pay the costs.*