*Spaw, LLC v. City of Annapolis*, No. 2, September Term, 2016. Opinion by Getty, J.

**ZONING LAW - HISTORIC DISTRICT ZONING VIOLATION PROCEEDINGS** – Historic preservation municipal infraction citations issued pursuant to the City Code of Annapolis are civil proceedings subject to Title 2 of the Maryland Rules, which permits the parties to engage in discovery.

**ZONING LAW - HISTORIC DISTRICT ZONING CITATIONS** – A historic preservation municipal infraction citation is sufficient under Maryland Code, Land Use Article § 11-203 when it includes the location and date citation was issued. Under the facts of this case, the property address and a general description of the violation was sufficient; the citation was not required to list each window that allegedly violated the historic preservation ordinance.

**ZONING LAW - LIMITATION OF ACTIONS - MARYLAND CODE, COURTS AND JUDICIAL PROCEEDINGS ARTICLE § 5-107** – Abatement is not a "penalty" under Maryland Code, Courts and Judicial Proceedings Article § 5-107.

**ZONING LAW - LIMITATION OF ACTIONS - MARYLAND CODE, COURTS AND JUDICIAL PROCEEDINGS ARTICLE § 5-101** – Statute of limitations under Maryland Code, Courts and Judicial Proceedings Article § 5-101 is not available as a defense in a suit by a municipality when it is enforcing zoning regulations, which is the exercise of a strictly governmental function.

**ZONING LAW - LIMITATION OF ACTIONS - LACHES** – City of Annapolis was not barred by laches from enforcing local historic preservation ordinances against a property owner since there was not an unreasonable delay in issuing the citations or prejudice to the property owner.

**ZONING LAW – RELIEF GRANTED** – Abatement, in the form of an after-the-fact Certificate of Approval, was the appropriate relief afforded to the City of Annapolis for a historic preservation zoning violation where the property owner admitted that work was performed without applying for a Certificate of Approval from the Historic Preservation Commission.

**ZONING LAW – MOTION FOR A NEW TRIAL, OR IN THE ALTERNATIVE, MOTION TO ALTER OR AMEND THE JUDGMENT** – The trial court did not abuse its discretion in denying the property owner's motion for a new trial, or in the alternative, motion to alter or amend the judgment when a mid-trial motion for summary judgment was granted in favor of the City despite the newly amended Rule 2-501, which

precludes mid-trial motions for summary judgment, since the case was pending before the Rule came into effect and it was not practicable for the trial court to implement the new Rule.

IN THE COURT OF APPEALS
OF MARYLAND

No. 2

September Term, 2016

_____

SPAW, LLC

v.

CITY OF ANNAPOLIS

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Getty, J.

_____

Filed: March 27, 2017

In this case we examine the enforcement powers available to a municipality under its historic preservation zoning ordinance and whether the City of Annapolis ("Annapolis" or the "City"), Respondent, exceeded those enforcement powers when a recalcitrant property owner failed to file the required application for a Certificate of Approval prior to commencing and completing a building rehabilitation project. Spaw, LLC ("Spaw"), Petitioner, a Delaware limited liability company, owns and manages an apartment building located at 2 Maryland Avenue in Annapolis, Maryland, which is within the designated historic district under the zoning ordinance of the City.

Ms. Lisa Craig, the Chief of the Annapolis Historic Preservation Commission ("Commission"), issued two historic preservation municipal infraction citations to Spaw alleging that Spaw replaced historic wood windows with vinyl windows without a Certificate of Approval from the Commission. Spaw requested a trial, and the first trial took place at the District Court of Maryland, sitting in Anne Arundel County. After the district court found in favor of the City, Spaw appealed the decision of the district court to the Circuit Court of Maryland for Anne Arundel County. In the *de novo* appeal, Spaw admitted to replacing historic wood windows with vinyl windows without prior approval by the Commission, as required by law. Based upon this admission, the court granted summary judgment to the City.

Spaw filed a timely petition for a writ of certiorari with this Court, which we granted. In summary, Spaw argues: (1) the circuit court trial for a historic preservation municipal citation should have been conducted as a criminal proceeding, not a civil proceeding; (2) the two historic preservation municipal citations should have been

dismissed for generality and a lack of specificity; (3) the statute of limitations precluded the City's enforcement of the historic preservation zoning violations; (4) the relief awarded was overly broad; and (5) the circuit court should have granted Spaw a new trial or amended the judgment in light of recent amendments to Maryland Rule 2-501.

We hold that historic preservation municipal citations are civil and in this case were not barred by the statute of limitations. In addition, the citations were sufficiently specific and the relief was proper. We are also unpersuaded by Spaw's contention that the circuit court abused its discretion by not granting Spaw's motion for a new trial or in the alternative to amend the judgment. Thus we affirm the judgment of the circuit court.

# I
# Background

## A. Maryland's Statutory Framework for Historic Preservation Zoning

In 1963, the General Assembly enacted Maryland's first statute for historic preservation zoning. *See* 1963 Md. Laws, Ch. 874. The Historic Area Zoning Act was originally codified as Maryland Code, Art. 66B § 8.01 *et seq*. Currently codified at Maryland Code, Land Use Article ("LU") § 8-101 *et seq*., the law enables local governments to regulate the preservation of historically significant sites and structures within their jurisdiction. LU § 8-104.

It is important to note that the authority for historic preservation zoning derives from this enabling act of the General Assembly and not from the general police power, so a jurisdiction's authority is limited to the powers provided in the Historic Area Zoning Act. *See generally Mayor & Alderman of Annapolis v. Anne Arundel Cty.*, 271 Md. 265

2

(1974) (examining the legislative history of the Historic Area Zoning Act); *see also* 74 Md. Op. Atty. Gen. 176, 1989 WL 503614, at *1 (Mar. 15, 1989) (stating municipal authority is limited to powers in the Historic Area Zoning Act); 73 Md. Op. Atty. Gen. 238, 1988 WL 481988, at *4 (Mar. 23, 1988) ("[T]he municipal zoning power may be exercised only to the extent of the General Assembly's grant."). Thus the statutory framework is separate and distinct from the other zoning provisions in the Land Use Article.

Traditional zoning laws focus on the use of the land, while historic preservation zoning laws are designed to preserve the external architectural features and historical character of properties. The concept of historic area zoning is summarized as follows:

> In brief, the zoning of historic areas requires that whenever an application is made for a permit for the erection of any new building or for the alteration of or additions to any existing building within the historic district, the plans therefor so far as they relate to appearance, color, texture or materials, and architectural design of the exterior thereof must be submitted to a commission for review and approval, and in this manner to prevent the intrusion of any building which would be destructive of the nature of the district.

*Faulkner v. Town of Chestertown*, 290 Md. 214, 224 (1981) (quoting 1 A. Rathkopf, *The Law of Zoning and Planning* § 15.01 (4th ed. 1975)). Historic area zoning does not displace traditional zoning. 62 Md. Op. Atty. Gen. 490, 1977 WL 35808 at *3 (Sept. 6, 1977). The historic area zoning is an overlay zone on the traditional zoning laws, which creates additional regulations for property owners within that area. *Id.*

Under the Maryland statute, local jurisdictions are authorized to enact ordinances to "regulate the construction, reconstruction, alteration, moving, and demolition of sites

or structures of historical, archaeological, or architectural significance . . . [and] sites or structures within districts[.]" LU § 8-104(a). The purpose of such ordinances are to:

(1) safeguard the heritage of the local jurisdiction by preserving sites, structures, or districts that reflect elements of cultural, social, economic, political, archaeological, or architectural history;
(2) stabilize and improve the property values of those sites, structures, or districts;
(3) foster civic beauty;
(4) strengthen the local economy; and
(5) promote the preservation and appreciation of those sites, structures, and districts for the education and welfare of the residents of each local jurisdiction.

LU § 8-104(b). Thus, to accomplish these purposes, local jurisdictions are permitted to "designate boundaries for sites, structures, and districts that are considered to be of historic, archaeological, or architectural significance[.]" LU § 8-105. Furthermore, local jurisdictions are authorized to "create a historic district commission or historic preservation commission" consisting of at least five members, a majority of which are residents of the local jurisdiction creating the commission. LU §§ 8-201, 8-202(a). The members are required to have "a demonstrated special interest, special knowledge, or professional or academic training in" areas such as history, architecture, architectural history, or historic preservation. LU § 8-202(b)(1). Local jurisdictions can establish and adopt additional qualifications for its commission members. LU § 8-202(b)(2). The members are appointed by the local jurisdiction's appointing authority to serve three-year staggered terms and can be reappointed. LU § 8-202(c).

A commission is required to "adopt rules and regulations necessary for the conduct of its business." LU § 8-203(a). An interested person, or his or her

4

representative, has the right to "appear and be heard at a public hearing that a commission conducts." LU § 8-203(b). A commission's powers and duties are outlined in LU §§ 8-203 through 8-501.

At issue in this case is a commission's authority to review and approve applications for changes to sites and structures. *See* LU § 8-302. Pursuant to LU 8-302(a), a person is required to submit an application with the commission prior to "constructing, reconstructing, altering, moving, or demolishing a site or structure located within a locally designated district if any exterior changes are involved that would affect the historic, archaeological, or architectural significance of the site or structure" and any of the changes are "visible or intended to be visible from a public way." The commission is then required to review the application in conformance with LU § 8-303, which requires the commission to consider the application in light of its own guidelines, adopted under LU § 8-301, and the four additional considerations outlined in the statute while limiting its review to the exterior features of the property.[1] The commission can then

---

[1] The Maryland Code, Land Use Article ("LU") § 8-303 states that a commission shall do the following when reviewing an application:
　(1) use the guidelines adopted under § 8-301 of this subtitle; and
　(2) consider:
　　(i)　the historic, archaeological, or architectural significance of the site or structure and its relationship to the historic, archaeological, or architectural significance of the surrounding area;
　　(ii)　the relationship of the exterior architectural features of the structure to the remainder of the structure and to the surrounding area;
　　(iii) the general compatibility of exterior design, scale, proportion, arrangement, texture, and materials proposed to be used; and
　　(iv)　any other factors, including aesthetics, that the commission considers pertinent.

5

approve or reject the application. LU § 8-302(b). The commission's decision is required to be filed with the local jurisdiction's building inspector—in the form of a "certificate of the commission's approval, approval with conditions, or modification, or written notice of rejection of an application or plan submitted to the commission for review." LU § 8-306(a). If the commission does not act within 45 days after the date the completed application was filed, then the application is deemed approved unless the application is withdrawn or an extension is agreed upon by the applicant and the commission. LU § 8-307. If the applicant is not satisfied by the commission's decision then it may appeal the decision. LU § 8-308. However, an applicant cannot begin work on a project nor can a building inspector issue a permit until the commission submits its certificate of approval, approval with conditions, or modifications. LU § 8-306(a).

If there is a historic preservation zoning violation, then a commission can request the enforcement authority of the jurisdiction to seek any of the remedies and penalties permitted by law. LU § 8-501. Enforcement of historic area zoning is similar to traditional zoning enforcement. *See* LU § 11-101(a). Local governments have the authority to institute an action to remedy a violation, to impose civil penalties, or to punish the violator. LU §§ 11-102, 11-103.

If there is a civil zoning violation, then the relevant sections of the Maryland Code are LU §§ 11-201 through 11-209. For a civil zoning violation, a citation may be issued to inform the offender of his or her violation, and he or she may elect to stand trial. LU §§ 11-203, 11-204. The trial is to be conducted like that for a municipal infraction under

6

Maryland Code, Local Government Article ("LG") §§ 6-108 through 6-115. LU § 11-206. If a district court determines that there was a violation of the historic preservation zoning laws, then it is "not a criminal conviction and does not impose any of the civil disabilities ordinarily imposed by a criminal conviction." LU § 11-209.

The Local Government Article describes the requirements and procedures for a civil zoning violation proceeding. Under LG § 6-108, the county State's Attorney, or an attorney designated by the county, is authorized to prosecute zoning violations and enter a nolle prosequi or place the case on the stet docket. The civil evidentiary standards apply and the government has the burden to prove its case by clear and convincing evidence. LG §§ 6-109(a)(3), (5). The defendant in a zoning violation case can plead guilty or not guilty, cross-examine witnesses, produce evidence, testify, and be represented by counsel at his or her expense. LG §§ 6-109(a)(2), (4). If the court determines that the defendant is guilty of a zoning violation then the court can order the defendant to pay the fine and court costs or order abatement of the violation. LG §6-110. However, LG § 6-115 reiterates LU § 11-209 and states that the court's finding of guilty "is not a criminal conviction for any purpose." LG § 6-115.

The statutory framework for historic preservation zoning has been upheld in multiple cases before Maryland's appellate courts. In fact, this Court considered its first historic preservation case four years before the United States Supreme Court upheld historic preservation zoning in the landmark case of *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978). *Mayor & Alderman of Annapolis*, 271 Md. at 265. In

7

*Penn Central* the Supreme Court affirmed a decision by the New York City Landmarks Preservation Commission, and held that, "States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city." 438 U.S. at 129. However, the Supreme Court also stated that this authority is not absolute and may constitute a "taking" if it goes too far—e.g. "has an unduly harsh impact upon the owner's use of the property." *Id.* at 127.

In *Mayor & Alderman of Annapolis*, Judge Wilson Barnes, writing for the majority, provided an extensive analysis of the General Assembly's passage of the Historic Area Zoning Act of 1963 and upheld the constitutionality of the state enabling statute. 271 Md. at 280-287, 294. Further, the Court held that Anne Arundel County was subject to the jurisdiction of the Annapolis Historic Preservation Commission. 271 Md. at 275. Anne Arundel County planned to demolish Mt. Moriah African Methodist Episcopal Church—a building within the historic district and owned by the County. *Id.* at 269. The Commission denied the application for the permit after a hearing where substantial evidence was presented regarding the historical and architectural merits of the building. *Id.* at 270-72. Anne Arundel County appealed the decision, arguing that it was not subject to the jurisdiction of the Commission. *Id.* at 273. This Court affirmed the Commission and held that the primary purpose of the legislation would be frustrated if everyone—private citizens and governmental bodies—were not bound to preserve the exterior of buildings with historic or architectural value. *Id.* at 291-92.

This Court recognized the broad applicability of the historic preservation zoning laws in *Faulkner,* 290 Md. at 226.  In *Faulkner*, the property owners—Mr. and Ms. Faulkner—performed work that was not included in the permit approved by Chestertown's Historic District Commission.  *Faulkner*, 290 Md. at 218.  After receiving complaints about the unauthorized work performed, the commission directed the Faulkners to correct the work performed outside of the scope of the permit.  *Id.*  The Faulkners refused and argued at trial that the commission was without authority to control their property since it did not have any "known architectural or historical significance."  *Id.* at 221.  This Court held that "[s]ince the Faulkners' building was located within one of Chestertown's historic districts" it was "subject to the jurisdiction of the Commission notwithstanding the fact that it had no architectural or historical significance."  *Id.* at 226.  As a result, if the Faulkners wished to make a change to the exterior of their property, then it was incumbent upon them to include all of the proposed changes they wished to make in their application for a Certificate of Approval.  *Id.* at 227.

In *Casey v. Mayor & City Council of Rockville*, 400 Md. 259, 289 (2007), this Court held that economic feasibility was not a required consideration under the governing statute when determining whether to designate a property as historic and that the designation did not constitute a "taking."  The Rockville Historic Preservation Commission designated the property at issue in *Casey* as historic because of "its link to prominent historical figures in the local government, as well as its architectural appeal."

*Casey*, 400 Md. at 270.  The property owner challenged the historic designation arguing that the economic feasibility and financial hardship should have been considered.  *Id.* at 279.  This Court concluded that the statute was "silent as to whether the local legislative body, in designating properties as historic areas, must consider the economic feasibility of preservation of a property and any financial hardship to the landowner."  *Id.* at 288.  As a result, the Court concluded that the Rockville Historic Preservation Commission was not required to consider those factors.  *Id.* at 289.

### B. Historic Preservation Zoning in the City of Annapolis

Pursuant to its authority under the Maryland Historic Area Zoning Act, the Annapolis City Council passed a historic preservation zoning ordinance in February 1968 subject to referendum by the City's voters.  *Mayor & Alderman of Annapolis*, 271 Md. at 269.  At the municipal election of May 20, 1969, the voters ratified the ordinance by a two-to-one margin in favor of approval.[2]

The Annapolis Historic District Design Manual, "Building in the Fourth Century," summarizes the goals of the historic preservation zoning ordinance "to safeguard Annapolis' heritage as reflected in its three centuries of historic architecture and its broadly visible waterfront."  *Building in the Fourth Century: Annapolis Historic District Design Manual* 1, 8 (1994, updated and expanded 2011), https://perma.cc/VDY8-6LPS

---

[2] Historian Jane Wilson McWilliams recounted the efforts of the historic preservation leaders to successfully advocate for the passage and ratification of a historic preservation ordinance in Jane Wilson McWilliams, *Annapolis, City on the Severn: A History* 340-345 (Johns Hopkins University Press et al. 2011).  The first ordinance was passed on June 9, 1952, but lacked the enforcement powers that later became available under the state enabling statute.  *Id.* at 326.  The vote on the new historic preservation ordinance at the May 20, 1969 election was 2001 in favor and 1051 opposed.  *Id.* at 347.

[hereinafter *Annapolis Historic District Design Manual*]. The boundaries of the designated historic district are established by the ordinance and encompass most of the streets and land area that comprised the colonial development of the City. Annapolis City Code ("ACC") § 21.56.030.

The City's historic preservation zoning ordinance specifically states the following purposes:

> [T]o preserve and enhance the quality of life and to safeguard the historical and cultural heritage of Annapolis by preserving sites, structures, or districts which reflect the elements of the City's cultural, social, economic, political, archaeological, or architectural history; to strengthen the local economy; to stabilize and improve property values in and around such historic areas; to foster civic beauty, and to preserve and promote the preservation and appreciation of historic sites, structures and districts for the education and welfare of the citizens of the City.

ACC § 21.56.010(C).

The Commission created by the City is a regulatory review board that ensures compliance with the historic preservation zoning laws. ACC § 21.08.060(A). The Commission serves the City's Historic Preservation Division, which is located within the Department of Planning and Zoning. The Commission is comprised of seven members, appointed by the Mayor of Annapolis and confirmed by the Annapolis City Council, serving three-year terms without compensation. ACC §§ 21.08.060(B), (C). The members are required to be residents of Annapolis and possess a demonstrated special interest, specific knowledge, or professional or academic training in such fields as history, architecture, architectural history, planning, archaeology, anthropology, curation,

11

conservation, landscape architecture, historic preservation, urban design, or related disciplines. ACC § 21.08.060(B).

The focus of historic preservation zoning is to consider applications for exterior property alterations within the historic district "pursuant to the specific standards established in the enabling law." 62 Md. Op. Atty. Gen. 490, 1977 WL 35808, at *7. As a result, property owners are required to obtain permission before making any changes by applying for a Certificate of Approval. ACC § 21.08.060(E)(4). Property owners and occupants—a person, individual, firm, or corporation—proposing to construct or change their property within the historic district are required to file an application for a Certificate of Approval to receive permission from the Commission before undertaking any changes that "would affect the historic, archaeological, architectural, or cultural significance of a site or structure within a designated district or a designated landmark, site, or structure any portion of which is visible or intended to be visible from a public way[.]" ACC § 21.56.040. This includes "construction, alteration, reconstruction, rehabilitation, restoration, moving, or demolition of a designated landmark, site, or structure or a site or structure within a designated historic district[.]" ACC § 21.56.040. Property owners can receive a municipal infraction citation for violating the historic preservation zoning ordinances by, among other things, willfully performing or allowing to be performed any work without first obtaining a Certificate of Approval. ACC § 21.56.120(A).

Historic preservation violators who receive a citation are subject to fines and the City is permitted[3] to institute an action to prevent, enjoin, abate, or remove the violation. ACC §§ 21.56.120(A); 1.20.070. The City Code also states, "Each and every day that the violation continues shall be deemed a separate offense. Violators may be assessed a fine as established by the City Council for each day that the violation continues." ACC § 21.56.120(A).

## C. Factual Background

This case began when the Commission issued two historic preservation municipal infraction citations for the alleged replacement of historic wood windows with vinyl windows prior to obtaining a Certificate of Approval from the Commission.

### The Property

Spaw owns the apartment building ("Property") at 2 Maryland Avenue. The four-story brick structure dominates the corner across from Gate 3 of the United States Naval Academy at the intersection of Maryland Avenue and Hanover Street. According to Spaw's Exhibit 10, the Property was built in 1929 by the Cooper Apartment Corporation. Maryland Historical Trust, *Maryland Inventory of Historic Properties*, Inventory Number AA-1836, Cooper Apartments, https://perma.cc/ZR3T-NSSM [hereinafter *Maryland Inventory of Historical Properties*]. The apartment building represents the Colonial Revival style and is a contributing structure in the Annapolis Historic District. *Id.*

---

[3] Maryland authorizes a municipality to issue a fine to violators, impose imprisonment, or both, and to impose civil penalties for violations. LU § 11-102(b). Additionally, municipalities are authorized to institute any appropriate action or proceeding to, as relevant here, restrain, correct, or abate a violation. LU § 11-103(a)(2).

In representing one period of the three centuries of historic architecture, the Annapolis Historic District Design Manual states, "the Colonial Revival style, which grew out of the 1876 Centennial Exhibition, has proven to be one of the most long-lived architectural styles in Annapolis." *Annapolis Historic District Design Manual* at 22 (citing Historic Annapolis Foundation, *A Guide to Domestic & Commercial Architecture Styles in Annapolis* (1975)). The Colonial Revival architectural features of the Property include "limestone detailing, including a raised basement, quoining and belt courses," a front entrance with a "Greek-inspired limestone surround" and a flat roof where the "brick parapet rises above the projecting cornice line." *Maryland Inventory of Historical Properties*, *supra* at 13.

The design of the windows are a prominent feature in the Colonial Revival design of the apartment building. *Id.* All of the windows have stone sills. *Id.* The upper story windows have brick lintels while the first story window lintels are part of the limestone belt course. *Id.* The basement windows are recessed in the limestone veneer of the foundation level. *Id.* At trial, it was estimated that the apartment building has 186 windows.

The Property was purchased by Ronald B. Hollander on or about August 19, 1977. As part of an estate planning strategy, Mr. Hollander conveyed the Property to his wife, Rochelle Hollander, on or about February 2, 2007. That same month, Ms. Hollander formed Spaw, a Delaware limited liability company, for the purpose of holding certain real estate assets and related property. Ms. Hollander conveyed the Property to Spaw on

14

or about September 12, 2007.  Throughout Spaw's existence, Ms. Hollander has been the company's sole member and Mr. Hollander has been the Maryland resident agent.

*The Citations*

On December 13, 2012, the Commission issued two civil citations to Spaw for violating the Annapolis historic preservation ordinances based on the observations by Ms. Mary Emrick, a City property maintenance inspector, and Ms. Craig.  On March 30, 2012, Ms. Emrick was visiting the Property for a different issue, when she noticed that the building had vinyl windows.  Ms. Emrick made note of the vinyl windows because she believed the windows were previously historic wood windows—a change that requires a Certificate of Approval from the Commission.  Ms. Craig later independently examined the exterior of the Property and confirmed that the historic wood windows were replaced with vinyl windows without the required Certificate of Approval from the Commission. [4]

---

[4] The Annapolis Historic Preservation Commission ("Commission") adopted a Design Manual that "provide[s] the criteria required for applicants to design and to make changes" to their property.  *Building in the Fourth Century: Annapolis Historic District Design Manual* 1, 33 (1994, updated and expanded 2011), https://perma.cc/VDY8-6LPS.

The Design Manual states the criteria for a Certificate of Approval to preserve and replace windows as follows:

> Historic windows and doors shall be preserved in place unless documentation that justifies replacement of the historic material is provided.  Historic windows shall be repaired by means of consolidation, Dutchman repairs and other restoration techniques.  When deterioration is too severe for the window or door to be practicably restored, new replicate windows or doors shall be fabricated.  The new units shall duplicate the historic sashes, glass, lintels, sills, frames and surrounds in design, dimensions, and materials.  Existing inappropriate replacements for

The citations alleged a municipal infraction under ACC § 21.56.120(A) for: (1) replacement of wood windows with vinyl windows without obtaining a Certificate of Approval; and (2) removal and replacement of windows without obtaining a Certificate of Approval.[5] The citations did not identify exactly which of the Property's 186 windows that were allegedly replaced nor the dates of when the alleged replacements occurred, but did include the date the citation was issued. Both citations stated that Spaw must appear in court, Spaw may elect to stand trial, and the City seeks abatement of the infraction. On February 12, 2013, Spaw's attorney notified the City that it was requesting a hearing on the citations and strict proof thereof.

### D. Procedural History

This case comes before this Court after the City's[6] motion for summary judgment was granted by the Circuit Court for Anne Arundel County in a *de novo* appeal from the District Court for Anne Arundel County. Spaw defended against the historic preservation municipal infraction citations before both courts. However, the circuit court found in

---

previously removed features may be replaced with historically appropriate replicas. *Vinyl and metal clad replacement windows are not permitted*.

*Id.* at 47-48 (emphasis added).

[5] The citations appear to be duplicative though they are not. The first citation focuses on the window material—a change from the historic wood window to the disapproved vinyl. The second citation focuses solely on the removal and replacement without prior approval, which is broader than the first citation.

[6] The Commission has the authority to issue citations, which are then adjudicated by the City of Annapolis ("Annapolis" or the "City") if the alleged violator stands trial. Annapolis City Code ("ACC") §§ 1.20.040, 1.20.050.

favor of the City and the judgment requires Spaw to submit an after-the-fact Certificate of Approval for all windows it replaced without prior approval from the Commission.

*District Court Trial Proceedings*

On May 7, 2013, the first trial was held in the District Court of Maryland for Anne Arundel County on the citations issued to Spaw. At the conclusion of the trial, the court found in favor of the City and entered an Order requiring Spaw to abate its failure to apply for a Certificate of Approval application with the Commission. The district court did not impose any fines. Spaw filed a motion to alter or amend judgment, which the district court denied after a hearing on July 23, 2013.

*Circuit Court Trial Proceedings*

Consequently, Spaw filed an appeal for a *de novo* trial in the Circuit Court for Anne Arundel County and the bench trial began on December 17, 2014. At the beginning of trial, the City made a preliminary motion to compel discovery and sanction Spaw for its failure to respond to interrogatories and appear for a deposition. The court granted the City's motion and ordered Spaw to pay the fees associated with the subpoena; to respond to the interrogatories within 30 days; and to submit to the deposition within 30 days. The trial proceeded on December 17 with testimony from two of the City's witnesses. On February 6, 2015, Spaw filed its first responses to the City's interrogatories. The trial was set to continue on March 5, 2015, but was postponed two times, first to May 28, 2015, and again to September 15, 2015.

Spaw subsequently filed supplemental interrogatories on September 11—four days prior to the second day of trial. In the supplemental interrogatories, Spaw admitted to replacing nine to ten wood windows with vinyl windows "in or around 2010." Accordingly, the City filed a motion for summary judgment on the eve of the second trial day supported by Spaw's supplemental interrogatories.

On September 15, 2015, the court heard from both attorneys regarding several preliminary matters before resuming the trial. First, Spaw argued that a one-year statute of limitations applied in this case pursuant to Maryland Code, Courts and Judicial Proceedings Article ("CJP") § 5-107, or at a minimum a three-year statute of limitation pursuant to CJP §5-101, which would preclude the City from seeking any penalty for any alleged infraction if it occurred more than one or three years prior to the issuance of the citations. The City argued that it was seeking abatement to require Spaw to file a Certificate of Approval with the Commission, which is not a fine, penalty, or forfeiture within CJP § 5-107 but rather an equitable remedy, which is not subject to § 5-101. The court stated it would take their arguments under advisement and later ruled that the statute of limitations did not apply.

Next, Spaw made a motion to quash a subpoena, which the court denied. Afterward, the City presented its motion for summary judgment to the court, which was supported by Spaw's admission in its supplementary interrogatories that nine to ten windows appeared to have been replaced in 2010 when Spaw was the owner of the property. The City argued that a motion for summary judgment can be raised at any time during the course of a legal proceeding and in lieu of affidavits brought witnesses to

18

testify on facts not yet in the record if the court needed additional support. Spaw did not contest the timing of the motion for summary judgment in its oral response to the City's motion nor raise any due process concerns. Rather, Spaw argued that an admission of replacing nine to ten windows was not sufficient to order abatement for all of the windows. The City's response was that the number of windows replaced was not relevant because replacing one window without a Certificate of Approval from the Commission was a violation. Therefore, the City contended, Spaw was required to abate its violation by filing an after-the-fact Certificate of Approval with the Commission for the windows it replaced. The City stated that an investigation would occur after Spaw filed its Certificate of Approval and that the Commission's determination for the Certificate is appealable.

After considering the arguments, the court found in favor of the City and granted the motion for summary judgment since there was no dispute that a violation existed. The court found there was evidence that at least one wooden window was removed and replaced with a vinyl window without a Certificate of Approval. Therefore, Spaw was required to abate its violation by filing an after-the-fact Certificate of Approval with the Commission for the windows replaced and removed without a Certificate.

Subsequently, Spaw moved for a new trial or in the alternative a motion to alter or amend judgment. Spaw argued that a new trial should be granted because the City was not permitted to file a motion for summary judgment after evidence was received at trial and that Spaw was prejudiced by having to defend against the motion the morning after it was filed; or, in the alternative, that the court's order should be altered or amended

19

because the relief granted by the court exceeds what may be permissibly imposed for a municipal infraction. The court denied Spaw's motion. Spaw filed a petition for a writ of certiorari, which we granted. 446 Md. 290 (2016). We rephrase the issues raised by the petition as follows:

> (1) Did the circuit court err by compelling discovery for historic preservation municipal infraction citations in a *de novo* circuit court appeal, by finding the proceeding was civil and subject to Title 2 of the Maryland Rules?
> (2) Did the circuit court err by refusing to dismiss the historic preservation municipal infraction citations as unspecific and general?
> (3) Did the circuit court err by finding that the historic preservation municipal infraction citations were not barred by the statute of limitations?[7]
> (4) Did the circuit court order broad injunctive relief beyond what is permitted for a historic preservation municipal infraction citation?
> (5) Did the circuit court abuse its discretion by refusing to grant Spaw's motion for a new trial, or in the alternative, motion to alter or amend judgment based on the newly amended Maryland Rule 2-501?

---

[7] Spaw phrases this issue in its petition for a writ of certiorari and its brief as follows: "Did the circuit court err in holding that abatement of a municipal infraction is not a 'penalty,' under section LG § 6-110 of the Local Government Article, for the purpose of applying the one year statute of limitations in section 5-107 of the Courts and Judicial Proceedings Article?" However, Spaw argues in its brief that Maryland Code, Courts and Judicial Proceedings Article ("CJP") § 5-101 or laches should have also precluded the City's case. This Court has declined to resolve disputes that are not presented in the petition for a writ of certiorari, nor fairly embraced in the question. *Fisher v. Eastern Corr. Inst.*, 425 Md. 699, 714 (2012). However, this issue was fairly embraced within the question. Furthermore, both parties thoroughly briefed the issue. Therefore, we have rephrased the question to encompass all of Spaw's statute of limitations contentions.

20

## II
## Discussion

### A. Standard of Review

The issues before this Court arise out of the circuit court's denial of Spaw's motion to dismiss the case, grant of summary judgment in favor of the City, and subsequent denial of Spaw's motion for a new trial. Where, as in the present case, an action has been tried without a jury, we "review the case on both the law and the evidence." Md. Rule 8–131(c). Maryland Rule 8-131(c) states:

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The issues raised in this case involve a review of the facts found by the trial judge as well as the interpretation of Maryland statutes. "It is well established that pure conclusions of law are reviewed *de novo*." *Bartlett v. Portfolio Recovery Assocs., LLC*, 438 Md. 255, 272 (2014) (citing *Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72 (2004)); *see also Woznicki v. GEICO Gen. Ins. Co.*, 443 Md. 93, 108 (2015). "Where a case involves 'the application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct' under a *de novo* standard of review." *Clancy v. King*, 405 Md. 541, 554 (2008) (quoting *Walter v. Gunter*, 367 Md. 386, 392 (2002)). "We will not disturb the judgment on the facts, however, unless the trial court's findings are clearly erroneous. 'If there is any competent evidence to support the factual findings of the trial court, those findings cannot be held to be clearly

21

erroneous.'" *Goff v. State*, 387 Md. 327, 338 (2005) (quoting *Solomon v. Solomon*, 383 Md. 176, 202 (2004)).

## B. *Historic Preservation Citations Are Civil Matters*

The first issue in this case is whether the civil or criminal rules of procedure apply to a municipal infraction proceeding for a historic preservation violation under ACC § 21.56.120. Spaw contends that historic preservation proceedings are governed by the criminal rules of procedure, and the City contends that the civil rules of procedure apply. The circuit court found that the rules of civil procedure governed the proceeding and granted the City's motion to compel discovery for Spaw's failure to answer the City's interrogatories. We affirm the circuit court and hold that municipal infraction proceedings for historic preservation violations are civil and are governed by the civil rules of procedure.

At trial, the City asked the circuit court to compel Spaw's response to its interrogatories. Spaw's contention before the circuit court, which it maintains before this Court, was that the interrogatories were inappropriate because the criminal rules of procedure applied. Spaw supports its contention by reviewing the language of the Local Government Article of the Maryland Code. Spaw relies on our opinion in *Maus v. State*, 311 Md. 85, 94 (1987), where we stated that a "guilty plea" is a criminal term, and refers to the language in the Local Government Article to prove that the legislature intended the proceedings to be criminal: prosecute, nolle prosequi, stet, plea of guilty or not guilty.

22

Spaw also cites the rights afforded to defendants of a municipal citation as indicative of the criminal character.

The City's position is that historic preservation municipal citation proceedings are civil in character, which is supported by an analysis of the statutory scheme as a whole. The City's position is that the words and phrases highlighted by Spaw are not defined as being exclusively criminal in nature. The City argues that Spaw inequitably highlights the terminology it deems criminal. In support, the City contends that the Local Government Article clearly includes language and terminology reflective of the civil character, e.g. that the municipal infraction is a civil offense. *See* LG § 6-102(a)(2); ACC § 1.20.020(A). The City also asserts that the evidentiary standards of a civil case apply, and the service of process for the citation conforms to the civil service of process. *See* LG §§ 6-103(b)(1)(i), 6-109(a)(3).

The City's contentions are supported by the amicus briefs filed by Anne Arundel County (the "County") and the City of Baltimore ("Baltimore"). The County's amicus brief echoes the arguments presented by Annapolis—arguing that the plain language of the statute declares that municipal infractions are civil offenses. The County traces the legislative history of the Local Government Article to demonstrate that confusion did exist regarding the quasi-criminal nature of municipal infraction proceedings under previous iterations of the statute. However, the County argues, this confusion was eliminated with the General Assembly's revisions in 1993, which adopted the civil burden of proof and evidentiary standard to reflect its intention that municipal infraction citation proceedings are civil in character. Baltimore's amicus brief argues that despite

23

the terminology used within the statute, a holistic view of the statute and ordinance demonstrate the civil character of the proceedings.

Courts across the country have grappled with analyzing whether a municipal ordinance infraction is a criminal or civil proceeding. Courts have held they are civil, quasi-civil, criminal, and quasi-criminal. 62 C.J.S. *Municipal Corporations* § 262 (2016). We do not make a broad determination in this case since the context is a narrow subset of municipal ordinance infractions—those issued for a historic preservation violation. Here, we hold that the character of a historic preservation municipal infraction proceeding is civil.

The analytical framework for determining whether a statute is civil or criminal is one of statutory construction. *See In re Victor B.*, 336 Md. 85, 90 (1994) (analyzing whether the Juvenile Causes Act was civil or criminal). This Court provides judicial deference to the policy decisions enacted into law by the General Assembly. We assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly.

> We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language. In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments.

24

*Douglas v. State*, 423 Md. 156, 178 (2011) (quoting *Evans v. State*, 420 Md. 391, 400 (2011)).

Thus, we begin our analysis by reviewing the plain language of the Maryland Code to determine whether there is any ambiguity in the statute. Once a citation is issued for a civil zoning violation it is necessary to look at the Local Government Article to determine how the adjudication will proceed. LG §§ 6-108 to 6-115. The State's Attorney, or an attorney chosen by the municipality, is authorized to prosecute a municipal infraction and enter a nolle prosequi or place the case on the stet docket. LG § 6-108. The defendant may also enter a plea of guilty or not guilty. LG § 6-109(a)(2). When the proceeding begins, the court is required to confirm that the defendant has received a copy of and understands the charges. LG §6-109(a)(1). The court is required to "apply the evidentiary standards provided by law or rule or the trial of a civil case" and "the municipality has the burden to prove by clear and convincing evidence that the defendant has committed the infraction." LG § 6-109(a)(3), (a)(5). The defendant may "cross-examine witnesses, produce evidence or witnesses on the defendant's own behalf, testify; and be represented by counsel of the defendant's choice and at the defendant's expense[.]" LG § 6-109(a)(4). At the conclusion of the proceeding, the court "may enter a verdict of guilty or not guilty, or before entering a verdict, place the defendant on probation." LG § 6-109(b).

The statute also states, "Adjudication of a municipal infraction is not a criminal conviction for any purpose." LG § 6-115. The court is authorized to impose the following if it finds that the defendant committed a municipal infraction:

(1) (i) the court shall order the defendant to pay the fine . . . ;
   (ii) the fine imposed is a judgment in favor of the municipality; and
   (iii) if the fine imposed is a judgment in favor of the municipality, and the judgment is enforceable in the same manner and to the same extent as other civil judgments for money unless the court has suspended or deferred the payment of the fine provided under item (2) of this section;
(2) the court may suspend or defer the payment of the fine under conditions that the court sets;
(3) the defendant is liable for the costs of the court proceedings; and
(4) the court may order the defendant to abate the infraction or enter an order authorizing the municipality to abate the infraction at the defendant's expense.

LG § 6-110.

Since the City issued Spaw the citations, it is also necessary to analyze the plain language of the Annapolis City Code. As stated *supra*, pursuant to the Land Use Article and the Local Government Article, the City of Annapolis created historic preservation ordinances, the Commission, and general municipal infraction provisions. ACC §§ 21.56; 1.20. As authorized by LU § 8-306, the City of Annapolis requires property owners to apply for a Certificate of Approval before performing work on their property located within the Historic District of Annapolis. ACC § 21.56.040. The Annapolis City Code, in relevant part, states:

A.   Any person(s) who willfully performs or allows to be performed any work without first obtaining a certificate of approval . . . will be in violation of the provisions of this article. A violation of the article shall be deemed a municipal infraction as stated in the City Code.

26

Each and every day that the violation continues shall be deemed a separate offense. Violators may be assessed a fine as established by the City Council for each day that the violation continues.

B.    In addition to other remedies and penalties, where there is a violation of this article, the Planning and Zoning Director, through the City Attorney, shall institute appropriate action to prevent, enjoin, abate or remove the violation.

ACC § 21.56.120.  The Annapolis City Code defines municipal infraction and violations

as follows:

A.    "Municipal infraction" means any violation of this code which has been specifically declared to be a municipal infraction.  For purposes of this code, a municipal infraction is a civil offense.

B.    "Violations": Unless specifically declared to be municipal infractions, all violations of this code shall be treated as misdemeanors.

ACC § 1.20.020.  The municipal infraction proceeding section states, in relevant part:

A. Payment of Fine.  The fine for a municipal infraction shall be as specified in the law violated.  The fine is payable by the recipient of the citation to the City at the Finance Department, Municipal Building, Annapolis, Maryland 21401, within twenty calendar days of receipt of the citation.

B. No Formal Hearing.  The City shall not conduct a formal hearing for any person in receipt of a citation of municipal infraction but may provide the violator, either personally or through an attorney, with additional information concerning the municipal infraction.  Any offender so cited may pay the fine as indicated in the citation or elect to stand trial for the offense.

C. Election to Stand Trial.  A person receiving a citation for a municipal infraction may elect to stand trial for the offense by notifying the City in writing of an intention to stand trial.  The notice shall be given at least five days prior to the date of payment as set forth in the citation.  Upon receipt of the notice of the intention to stand trial, the City shall forward to the district court in Annapolis a copy of the notice of intention to stand trial. Upon receipt of the citation, the district court shall schedule the case for

trial and notify the defendant of the trial date. All fines, penalties or forfeitures collected by the district court for violations of municipal infractions shall be remitted to the general fund of the City.

\* \* \*

E. Conviction Not Criminal Offense. Conviction of a municipal infraction, whether by the district court or by payment of the fine to the City, is not a criminal conviction for any purpose, nor does it impose any of the civil disabilities ordinarily imposed by a criminal conviction.

F. Court Proceedings and Rights of Accused. In any proceeding for a municipal infraction, the accused shall have the same rights as for trial of criminal cases. The accused shall have the right to cross-examine witnesses against the accused, to testify or introduce evidence in the accused's own behalf and to be represented by an attorney of the accused's own selection and at the accused's own expense.

ACC § 1.20.050. The City Code also allows for other enforcement actions:

In addition to the other provisions set out in this chapter, the City may institute injunctive, mandamus or any other appropriate action or proceedings at law or equity for the enforcement of this code or to correct violations of this code, and any court of competent jurisdiction has the right to issue restraining orders, temporary or permanent injunctions or mandamus or other appropriate forms of remedy or relief.

ACC § 1.20.070.

Our review of the plain language of the relevant portions of the Local Government Article and Annapolis City Code leads us to conclude that the language is unambiguous. Spaw's contention that the character of the proceeding for municipal infractions appears to be criminal because of the terminology in the statute is not persuasive. An examination of these terms using Black's Law Dictionary demonstrates that these terms are not strictly criminal:

**prosecute: 1:** To commence and carry out (a legal action). **2.** To institute and pursue a criminal action against (a person).

28

**stet: 1.** An order staying legal proceedings, as when a prosecutor determines not to proceed on an indictment and places the case on a stet docket. The term is used chiefly in Maryland.

**nolle prosequi: 1.** A legal notice that a lawsuit or prosecution has been abandoned. **2.** A docket entry showing that the plaintiff or the prosecution has abandoned the action.

**plea: 1.** *Criminal law.* An accused person's formal response of "guilty," "not guilty," or "no contest" to a criminal charge. **2.** At common law, the defendant's responsive pleading in a civil action. **3.** A factual allegation offered in a case; a pleading.

**probation: 1.** A court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison, usu[ally] on condition of routinely checking in with a probation officer over a specified period of time. **2.** The period of time during which a sentence of probation is in effect.

*Black's Law Dictionary* (10th ed. 2014). The definitions do not support Spaw's contention that the terms are solely associated with a criminal proceeding.[8]

The plain language of the Local Government Article makes clear that historic preservation violations are civil. First, the Local Government Article indicia that the proceeding is civil in character includes the civil evidentiary standards, the municipality's civil burden of proof (clear and convincing evidence), and the requirement that the defendant retain counsel, if desired, at his or her own expense. LG §§ 6-109(a)(3), (a)(5),

---

[8] In *Maus v. State*, 311 Md. 85, 94 (1987), this Court acknowledged that the terms "conviction," "guilty plea," "sentence," "guilt or innocence" and "plea bargain" strongly suggested that a statute only applied to criminal cases. However, the Court's holding also rested on the legislative history and the legislative goals of the statute. *Id.* at 95. Therefore, our opinion in this case—that a plea can be used in either civil or the criminal context—does not contradict *Maus* since the opinion did not turn solely on the term "plea." Rather, it was the use of all of the terms in conjunction with the legislative history and goals.

(a)(4)(iv). Second, the Historic Area Zoning Act is placed within the Land Use Article as opposed to the Criminal Law Article. Third, the Article clearly states that adjudication is not a criminal conviction for any purpose. LG § 6-115. Finally, the Historic Area Zoning Act serves non-punitive goals.[9]

The statute states that a defendant is permitted to testify, cross-examine witnesses, and produce evidence on his or her behalf. LG § 6-109(a)(4). However, it is not uncommon to extend the constitutional safeguards afforded to criminal defendants to proceedings that are not criminal in nature. *See In re Victor B.*, 336 Md. at 91 (stating that the Supreme Court extended constitutional safeguards afforded to criminal defendants to civil juvenile proceedings). Furthermore, this language would be unnecessarily duplicative if the legislature intended the proceedings to be criminal actions and would limit the rights afforded to defendants in criminal trials.

The City Code also clearly establishes that historic preservation violations are civil. The civil indicia in the City Code are similar to the Maryland Code sections discussed *supra*. First, the City Code states that performing work within the historic district without a Certificate of Approval is a municipal infraction, which is defined as a civil offense. ACC §§ 21.56.120, 1.20.020. Second, the City Code states that a conviction is not a criminal conviction for any purpose and does not impose any of the civil disabilities ordinarily imposed by a criminal conviction, which mirrors the Local

---

[9] LU § 8-102 states, "It is a public purpose in the State to preserve sites, structures, and districts of historical, archaeological, or architectural significance and their appurtenances and environmental settings."

30

Government Article. ACC § 1.20.050. Third, the ordinance serves non-punitive goals. *See* ACC § 21.56.010. Lastly, the City Code is analogous to LG § 6-109(a)(4), and extends the rights of the accused in a criminal trial to the defendant in a municipal infraction proceeding. *See* ACC § 1.20.050. As we stated with respect to LG § 6-109(a)(4), this does not transform the civil proceeding into a criminal proceeding.

The plain language of the Maryland Code and the City Code is unambiguous that historic preservation municipal infraction citations are civil, which is also supported by the non-punitive purpose of historic preservation in both the Maryland and Annapolis Code. For the reasons stated, the circuit court properly conducted the proceedings as a civil trial and properly compelled Spaw's compliance with civil discovery.

### C. The Motion to Dismiss Was Properly Denied

The second issue in this case is whether the circuit court improperly denied Spaw's motion to dismiss the citations as being unspecific and general. The citations state: "Removal and replacement of windows without obtaining a Historic Preservation Commission Certificate of Approval;" and "Replacement of wood windows with vinyl windows without obtaining a Historic Preservation Commission Certificate of Approval."

Spaw's contention is that the historic preservation citations did not have sufficient particularity to enable it to prepare a proper defense, which violated its due process rights, and should have been dismissed. The City contends that the citations were legally sufficient. The circuit court found that the citations were sufficient and denied Spaw's motion to dismiss. We agree with the circuit court, and hold that the historic preservation

31

citations issued to Spaw for its historic preservation violations were sufficient and did not violate its due process.

Spaw contends that the citations were unspecific and general because the citations did not list each window, of the Property's 186, that violated the ordinance. Spaw also states that the citations were deficient by failing to include the date or time when the window work was allegedly performed. As a result, Spaw asserts that this was a violation of its due process rights because it was denied the fair opportunity to defend against the alleged infractions. Spaw contends that it cannot be held responsible unless the City shows that Spaw "willfully perform[ed] or allow[ed] to be performed any work without first obtaining a Certificate of Approval" for each window the City alleges was replaced.

The City contends that the citations were legally sufficient because the property address was included, which gave Spaw sufficient notice to defend against the municipal infraction citations. The City states that the Commission was not required to include the level of specificity that Spaw desires. The City contends that the exact time and date of the window replacement was not required since the violations are continuous and the City does not have knowledge of the exact date and time of the violation. The City's contention is that the discovery of the violation is the pertinent date and time—not the exact dates and times that Spaw replaced the windows. The City contends that Spaw is in a better position to identify the exact dates and times of the window work since Spaw acquired the property from Rochelle Hollander, the sole principal of Spaw, and Ms.

32

Hollander received the property from her husband, Ronald Hollander—who held the property since 1977 before transferring it to Ms. Hollander.

The City's contentions are supported by the amicus briefs filed by the County and Baltimore. The County asserts that the citations complied with the law since the statute does not require the enforcement officer to identify a more specific location describing where the municipal infraction existed than it did, e.g. the exact apartment numbers containing the windows or a description of the exact windows removed and replaced. Furthermore, the County argues, like Annapolis, that under the ordinance "[e]ach and every day the violation continues . . . [is] a separate offense." ACC § 21.56.120A. Therefore, the government official is only required to indicate when the municipal infraction was observed.

Baltimore asserts that historic preservation codes would be virtually impossible to enforce if the municipality were required to pinpoint the temporal origin of the infraction, which is not consistent with the statutory purpose. Additionally, Baltimore responds to Spaw's due process contentions by stating that due process is flexible and only requires such procedural protections as the particular situation demands. Here, Baltimore contends, Spaw is in a much better position than Annapolis to pinpoint the exact dates of the window replacement.

We agree with the City and hold that a citation for a zoning violation is only required to include the location—property address—and date the violation was observed to be legally sufficient. Thus, the circuit court properly refused to grant Spaw's motion to dismiss.

33

Again, we begin our analysis by first looking to the normal, plain meaning of the language of the statute. While historic preservation is separate and distinct from other zoning provisions it is enforced like other zoning laws, and historic preservation citations are issued like zoning citations.[10] LU §§ 11-101, *et seq*. Thus we look at LU §11-203, which states that civil zoning violation citations are required to contain:

(i)     the name and address of the person charged;
(ii)    the nature of the violation, including the provision violated;
(iii)   the location and time of the violation;
(iv)    the amount of the fine;
(v)     the manner, location, and time for payment of the fine; and
(vi)    notice of the cited person's right to elect to stand trial for the violation and how to exercise that right.

The municipal infraction citation requirements in the City Code are identical except ACC §1.20.040(C) states, "The location, date and time that the infraction occurred." ACC § 1.20.040.

The plain language of LU § 11-203 is unambiguous—only the location and time of the violation is required to be included on the citation. ACC § 1.20.040(C) requires the location, date, and time. The citations issued to Spaw were on a standard uniform civil citation form that provided lines for the location and time of the violation to be filled in by the citing officer. The location used by the citing officer was the property address—2 Maryland Avenue, Annapolis, MD 21401. Spaw contends that the location should have included each window within the "location" section of the citation form. However, this is not required under the plain language of the statute. As the property

_____

[10] Spaw cites the citation requirements in LG § 6-103, which applies to municipal infraction citations generally. Here, the appropriate section is the LU § 11-203, which specifically applies to zoning violations.

34

owner, Spaw had sufficient information to address the citations at trial. Knowing that the City was alleging that Spaw replaced vinyl windows on its property, Spaw should have been able to identify which windows were replaced without a Certificate of Approval prior to trial. Spaw should have foreseen that it would have to produce at least some evidence that the vinyl windows were installed with permission by the Commission. Therefore, we hold that the citations were adequate to give Spaw notice of its violations, and that each window allegedly replaced without a certificate was not required to be listed.

Spaw also contends that the Commission's failure to include the exact time of day was fatal. We cannot agree, and we hold that this alone was not enough to warrant a motion to dismiss since the citation issuance date was included. While the citation should have included the time as required by LU § 11-203 and ACC § 1.20.040(C), a historic preservation violation continues—"each and every day that the violation continues shall be deemed a separate offense." ACC § 21.56.120. Therefore, here, the omission of the time of day was harmless since the date was included.

Neither due process nor the statute require the level of specificity that Spaw contends is required. In practice, if commissions were required to state the exact location and time that the property owner performed work without a Certificate of Approval or permit, then property owners could defeat the entire historic preservation scheme by surreptitiously altering their property. In summary, Spaw's position is that someone, somewhere, somehow, at some unknown time replaced the wooden windows in the building, and if the City is unable to identify the who, what, when, where and how of the

35

window replacement then the City has no evidence to issue a citation. We do not believe that the legislature intended to incentivize property owners to flout the law. As this Court stated in *Faulkner*, "the whole concept of historic zoning 'would be about as futile as shoveling smoke'" if, for example, the historic preservation commission was powerless to enforce historic preservation ordinances because it did not witness the performance of work without a Certificate of Approval. 290 Md. at 225 (quoting *Suitland Dev. Corp. v. Merchants Mort. Co.*, 254 Md. 43, 53 (1969)). If a property owner desires to make a change to his or her property that is within a historic district, then it is incumbent on the property owner to submit the necessary application for approval. *Cf. Faulkner*, 290 Md. at 227 ("If they want a permit, it is incumbent upon them to make an application for it."). We hold that the circuit court was correct in denying the motion to dismiss.

### D. *The Statute of Limitations Did Not Apply*

The third issue in this case is whether the two statutes of limitations cited by Spaw, CJP §§ 5-107 and 5-101, and laches precluded the City from enforcing the historic preservation ordinances. Spaw's contention is that this case should be dismissed as untimely pursuant to CJP §§ 5-107 and 5-101 and the equitable doctrine of laches. The City contends that the case was timely. The circuit court found that the statutes of limitations and laches did not apply to this case. We agree, and hold that the circuit court properly denied Spaw's motion to dismiss.

Spaw raised the statute of limitations defenses in a preliminary motion to dismiss pursuant to Maryland Rule 2–322. "It is well settled that a motion to dismiss ordinarily should not be granted by a trial court based on the assertion that the cause of action is

36

barred by the statute of limitations unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." *Rounds v. Md.-Nat'l Capital Park & Planning Comm'n*, 441 Md. 621, 655 (2015) (quoting *Litz v. Md. Dep't of the Env't*, 434 Md. 623, 641 (2013)).

*CJP § 5-107*

The first statute of limitations that Spaw contends applies to this case is CJP § 5-107. Spaw contends that the circuit court erred in finding that CJP § 5-107 did not apply in this case because the City was seeking a "fine, forfeiture, or penalty." Spaw states that the City originally sought a fine and arbitrarily withdrew it in the *de novo* trial before the circuit court. Spaw argues that a municipal infraction citation requires the City to seek a fine within one year after the offense was committed. Spaw's contention is that the windows were replaced more than a year ago, and that the City withdrew its original fine to circumvent the statute of limitations. Additionally, Spaw contends that abatement is a "penalty" under CJP § 5-107, and the circuit court erred by finding that there were no penalties at issue, which would trigger the one-year statute of limitations. Spaw's assertion that abatement is a penalty rests on the section title and the fact that it will have to pay a fee for the application for the Certificate of Approval, which is doubled for an after-the-fact application.

The City contends that the circuit court correctly held that CJP § 5-107 does not apply to this case because the City withdrew the fine and sought abatement, which is not a penalty. The City asserts that it is not required to seek a fine for a citation and that it had the authority to withdraw its request for a fine in the *de novo* trial. Therefore, the

37

City's contention is that CJP § 5-107 does not apply since the remedy sought is abatement. The City states that abatement is not a "penalty" solely because of the title of the section, which is not authoritative or substantive and cannot be read to inject intent into the statute. The City also directs this Court to Judge Lowe's concurring opinion in *Nelson v. Real Estate Comm'n*, 35 Md. App. 334, 345, *cert. denied*, 280 Md. 733 (1977), which stated that "penalty" in CJP § 5-107 only applies to a monetary fines, monetary penalties, and monetary forfeitures. Lastly, the City states that a fee is required for all applications for a Certificate of Approval. Therefore, the City contends, the application fee is not a "penalty" within the meaning of CJP § 5-107 since this is the normal cost of going through the administrative process that Spaw should have undertaken in the first place.

First, we must analyze whether the City was authorized to withdraw the fine prior to the *de novo* appeal in the circuit court. Our analysis begins with the plain language of LU §§ 11-102 and 11-103, which states in relevant part:

§ 11-102.

(a) *Violation*. – A violation of this division or of a local law enacted or regulation adopted under this division is a misdemeanor.
(b) *Penalties*. – A legislative body may:
    (1) Provide for punishment of a violation by fine or imprisonment or both; and
    (2) Impose civil penalties for a violation.

§11-103.

(a) *Institution of action or proceeding*. – In addition to any other available remedy, a local jurisdiction may institute any appropriate action or proceeding to:
    . . .
    (2) Restrain, correct, or abate the violation[.]

38

Accordingly, the Annapolis City Code states:

> A violation of the article shall be deemed a municipal infraction as stated in the City Code. Each and every day that the violation continues shall be deemed a separate offense. Violators may be assessed a fine as established by the City Council for each day that the violation continues.
>
> In addition to other remedies and penalties, where there is a violation of this article, the Planning and Zoning Director, through the City Attorney, shall institute appropriate action to prevent, enjoin, abate or remove the violation.

ACC § 21.56.120. The plain language of both the Maryland Code and the Annapolis City Code makes clear that a fine and abatement are separate remedies. As such, the City had discretion to pursue either the fine or the abatement to enforce the Annapolis City Code. Thus, we hold that the City's withdrawal of the fine prior to the *de novo* trial in circuit court was permissible.

Second, we must determine whether abatement is a "penalty" for the purpose of CJP § 5-107. The circuit court found that there were no penalties at issue that would trigger the one-year statute of limitations under CJP § 5-107. The plain language of CJP § 5-107 makes clear that abatement is not a penalty for the purpose of CJP § 5-107 since it is not a punishment, but rather is a remedial measure. Accordingly, the circuit court properly denied Spaw's motion to dismiss.

As we stated in the prior sections of this opinion, our analysis begins with the plain language of the statute, which states, in relevant part, "[A] prosecution or suit for a fine, penalty, or forfeiture shall be instituted within one year after the offense was

39

committed." CJP § 5-107. The statute itself does not state what falls within the classification of a "penalty," nor does it define the term "penalty."

This Court has not opined on the definition of "penalty" under CJP § 5-107. In another context, we defined "penalty" as "a sum of money which the law exacts payment by way of punishment for doing some act that is prohibited or omitting to do some act that is required to be done." *Comm'r of Motor Vehicles v. Lee*, 254 Md. 279, 286 (1969). In a different context, the Supreme Court defined "penalty" as "a means of punishment." *United States v. Childs*, 266 U.S. 304, 307 (1924) (distinguishing penalty and interest).

The Court of Special Appeals opined on the definition of penalty under CJP § 5-107 in two cases: *Nelson*, 35 Md. App. at 351, and *Williams v. Standard Fed. Sav. & Loan Assoc.*, 76 Md. App. 452, *cert. denied*, 313 Md. 689 (1988). In *Nelson*, Judge Lowe analyzed the legislative history of CJP § 5-107 and concluded that this section was intended, from its inception, to only apply to "monetary 'fines', monetary 'penalties', and monetary 'forfeitures'." 35 Md. App. at 351 (Lowe, J., concurring). Judge Lowe stated that the term "penalty" in CJP § 5-107 "denotes money recoverable by virtue of a statute imposing a payment by way of punishment." *Id.*

In *Williams*, the Court of Special Appeals traced the history of CJP § 5-107 from its inception on April 20, 1777, and concluded that "[the statute] has always been considered as applicable only to suits brought on behalf of the State to enforce the State's penal laws for its financial benefit." 76 Md. App. at 457-460; s*ee generally Master Fin., Inc. v. Crowder*, 409 Md. 51, 72-73 (2009) (acknowledging the thorough analysis of CJP § 5-107 in *Williams*). The court held that the meaning of the term penalty is "far from

40

inflexible and depend[s] on the context in which [it] is used." 76 Md. App. at 461. This conclusion was supported by cases from the Supreme Court and various other jurisdictions. *Id.* at 462-464. The court quoted a Supreme Court opinion that defined the term "penalty" as "something imposed in a punitive way[.]" *Id.* at 462 (quoting *Meeker v. Lehigh Valley R.R. Co.*, 236 U.S. 412, 423 (1915)). Additionally, the *Williams* court stated that the Supreme Court has analyzed whether the object of the proceeding "is to penalize for the commission of an offense against the law" when analyzing whether a statute was quasi-criminal. *Id.* (quoting *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700 (1965)). Thus, this leads us to conclude that a "penalty" is a punishment.

An examination of these terms using Black's Law Dictionary and Merriam-Webster supports the case law defining a penalty as a punishment:

> **penalty:** a [p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine; esp[ecially] a sum of money exacted as punishment for either a wrong to the state or civil wrong. Though usu[ally] for crimes, penalties are also sometimes imposed for civil wrongs.

*Penalty*, *Black's Law Dictionary* (10th ed. 2014).

> **penalty:** 1: the suffering in person, rights, or property that is annexed by law or judicial decision to the commission of a crime or public offense; 2: the suffering or the sum to be forfeited to which a person agrees to be subjected in case of nonfulfillment of stipulations.

*Penalty*, *Merriam-Webster* (2015), https://perma.cc/9AYH-BRFS. Thus, a penalty is a punishment.

Now we must determine whether the "abatement" is a penalty under CJP § 5-107. We have not opined on the definition of "abate" or "abatement." However, an examination of these terms leads us to conclude that abatement is not a penalty.

41

Abatement is "the act of eliminating or nullifying," *Abatement*, *Black's Law Dictionary* (10th ed. 2014), or "to put an end to; nullify," *Abate*, *Merriam-Webster* (2016), https://perma.cc/A22Y-7ZHE. Thus, the City sought to eliminate Spaw's violation of not complying with the administrative process—filing an application for a Certificate of Approval—by compelling it to do so. Requiring a property owner to obtain a Certificate of Approval from the Historic Preservation Commission is not a punishment nor a penalty within CJP § 5-107. The City did not seek to impose a punishment—monetary or otherwise—for Spaw's failure to obtain the Certificate of Approval. Therefore, abatement of a historic preservation violation that requires the violator to submit an application for a Certificate of Approval is not a penalty and the circuit court properly found that CJP § 5-107 did not apply in this case.

*CJP § 5-101 and Laches*

Spaw contends that if CJP § 5-107 does not apply to this case, the citations should have been barred by the three-year statute of limitations set forth in CJP § 5-101 or laches. Spaw's contention is that CJP § 5-101 requires actions at law to be filed within three years from the date the violation accrues, and this case was an action for money damages—an action at law—and abatement. Initially, Spaw suggested that the action accrued more than fourteen years ago, and is therefore barred by CJP § 5-101. With regards to laches, Spaw argues that abatement is an equitable remedy so the doctrine of laches barred the City's claims. Spaw argues that the City Inspector performed annual rental inspections over approximately ten to fifteen years without issuing a citation.

42

Therefore, Spaw contends, laches should apply since the City did not take action sooner, which prejudiced Spaw since it did not have sufficient information to respond.

The City responds by stating that neither CJP § 5-101 nor the doctrine of laches apply in this case. The City argues that CJP § 5-101 does not apply because this case is not an action at law, but rather an action in equity since abatement is an equitable remedy. Even if CJP § 5-101 applies, the City contends, the violation is continuing and the citations were issued on December 13, 2012, which was within the statutory time since it was less than one year from the date that the Chief of the Commission discovered the violation. The City also responds to Spaw's laches contention by asserting that laches does not apply because Spaw was not prejudiced. The City's contention is that Spaw violated the ordinance by not correcting known violations before taking title, in a non-arm's length conveyance. The City also contends that in Spaw's supplemental interrogatories it admitted that wood windows were replaced without a Certificate of Approval in or around 2010. Therefore, the City contends, laches does not apply because Spaw was not prejudiced by the citations issued by the City.

Before analyzing whether the statute of limitations or laches apply to the facts in this case, we think it necessary to determine whether either apply to the City of Annapolis. In *Goldberg v. Howard Cty. Welfare Bd.*, we held that the statute of limitations was not a bar in an action growing out of the exercise of a governmental function by a political subdivision of the State. 260 Md. 351, 359 (1971); *see also Wash. Suburban Sanitary Comm'n v. Pride Homes, Inc.*, 291 Md. 537 (1981). Our conclusion was supported by the following:

> The statute of limitations will bar the governmental unit where it is asserting a private or proprietary right, but will not apply where the right being asserted is public or governmental in nature. In other words, the governmental plaintiff, in seeking to enforce a contract right or some right belonging to it in a proprietary sense, may be defeated by the statute of limitations, but as to rights belonging to the public and pertaining purely to governmental affairs, and in respect of which the political subdivision represents the public at large or the state, the exemption in favor of sovereignty applies, and the statute of limitations does not operate as a bar.

*Goldberg*, 260 Md. at 358-359 (quoting 51 Am. Jur. 2d *Limitations on Actions* § 412).

This concept is derived from the ancient common law maxim of *nullen tempus occurrit regi* ("time does not run against the King"). *Anne Arundel County v. McCormick*, 323 Md. 688, 694 n.3 (1991). Maryland courts have adopted and applied this maxim, which exempts the State and its agencies from the bar of the statute of limitations such as CJP §5-101, which does not expressly bar the State or its agencies. *Id.* at 694-95. This maxim has a more limited effect when the suitor is one of the State's political subdivisions or municipalities. *Id.* at 695. In that instance, the municipality can only avoid the bar of the statute of limitations if the action asserted arises from the exercise of a governmental function as distinguished from a proprietary or corporate function. *Id.* (citing *Goldberg*, 260 Md. at 358). We observed that this distinction is sometimes illusory in practice, and quoted the following test:

> Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument incurring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in its nature.

*Id.* at 696 (quoting *Baltimore v. State*, 173 Md. 267, 276 (1937)). In other words, the test is "whether the act performed is for the common good of all or for the special benefit or

44

profit of the corporate entity." *Id.* (quoting *Tadjer v. Montgomery County*, 300 Md. 539, 547 (1984)).

In this case, the circuit court properly found that CJP § 5-101 was not a bar. The City's action, enforcing historic preservation ordinances, arises from the exercise of a governmental function. In *Casey*, we stated, "It is well settled that the adoption and administration of zoning regulations are a valid exercise of a government's police power so long as the limitations imposed are in the public interest and are related substantially to the health, safety, or general welfare of the community." 400 Md. at 306. "This Court has repeatedly stated that the preservation of architecturally or historically significant areas is a valid exercise of the governmental power." *Id.* at 307 (quoting *Belman v. State*, 322 Md. 207, 211 (1991) (citing *Donnelly Advert. Corp. of Md. v. Mayor & City Council of Balt.*, 279 Md. 660, 671 (1977)). As we previously stated, the object of the historic preservation ordinances are to preserve and enhance the quality of life and to safeguard the historical and cultural heritage of Annapolis, which the City believes strengthens the local economy, stabilizes and improves property values, and fosters the civic beauty. Accordingly, the enforcement of the historic preservation ordinances of the City of Annapolis pertains purely to governmental affairs and has no element of private interest. We hold that CJP § 5-101 does not run against the City of Annapolis as a municipality exercising its governmental powers to enforce the historic preservation ordinances.

The last limitations defense that Spaw raises is laches. Laches is an equitable defense asserting an inexcusable delay by the suitor in asserting its right without necessary reference to duration. *Lipsitz v. Parr*, 164 Md. 222, 226 (1933). Laches

45

protects against stale claims "and is based upon grounds of sound public policy by discouraging fusty demands for the peace of society." *Liddy v. Lamone*, 398 Md. 233, 243-44 (2007) (quoting *Ross v. State Bd. of Elections*, 387 Md. 649, 668 (2005)). While laches does not apply to the State when it sues in its sovereign capacity in its own courts, the City has not asserted that this extends to municipalities. However, here, it does not appear that the City inexcusably delayed in issuing the citations. The record reflects that the Commission acted promptly in issuing the citations after Ms. Emrick notified the Commission of the violation and the trial occurred promptly. At trial, Ms. Emrick testified that she could remember wood windows in the property in 2007 and 2010.[11] Therefore, it is reasonable to believe that the windows were replaced between 2010 and 2012. Ms. Emrick was visiting the property on March 30, 2012, when she noticed the vinyl windows. The citations were issued on December 13, 2012. Thus, the citations were issued in a timely manner. We are also unpersuaded by Spaw's contention that it was prejudiced. Any delay that existed between when the windows were actually replaced and when the citations were issued can be attributed to Spaw's failure to apply for the Certificate of Approval.

We also wish to make clear that while the facts of this case favor the Commission, historic preservation commissions in Maryland do not have unbridled authority in their

---

[11] Ms. Mary Emrick, a City property inspector, also testified that several windows on Hanover Street were vinyl since she began her position, approximately fourteen years ago. Spaw points to this testimony to support its laches defense. However, we are unpersuaded. Spaw's supplemental interrogatories admitted to replacing wood windows with vinyl in 2010. The replacement of wood windows fourteen years ago does not relieve Spaw of its obligation to apply for a Certificate of Approval prior to its replacement of the windows in 2010.

decision-making and enforcement powers. It is incumbent upon the Commission to effectively regulate and administer the provisions of historic preservation zoning ordinances, and adhere to their rules of procedure to ensure that property owners' due process rights are protected.

### E. The Circuit Court Properly Denied Spaw's Motion for New Trial and Motion to Alter or Amend Judgment

The fourth issue is whether the circuit court abused its discretion by denying Spaw's motion for a new trial or, in the alternative, Spaw's motion to alter or amend the judgment. Spaw contends that a new trial was warranted, or the judgment should have been altered or amended, because the motion for summary judgment was improperly filed mid-trial since the amended Maryland Rule 2-501 became effective on July 1, 2015—in the middle of Spaw's two trial dates. The City contends that the motion for summary judgment was proper since the amended Rule is not an absolute bar to a mid-trial motion for summary judgment, which allows the court to grant permission for a party to file a motion for summary judgment even if evidence was received at trial. We hold that the circuit court did not abuse its discretion.

Spaw argues that the circuit court's entry of summary judgment was improper because of the newly amended Rule 2-501, which prohibits a motion for summary judgment mid-trial. Spaw also argues that the circuit court should have granted its motion because it did not have an adequate opportunity to respond to the City's motion for summary judgment in writing and with affidavits. Lastly, Spaw states these

47

circumstances implicate issues of fair notice and the opportunity to defend, and Spaw's due process rights were violated.

The City responds that even under the newly amended Rule a mid-trial motion for summary judgment is permitted with the court's permission. The City responds to Spaw's due process contention by stating that its motion for summary judgment was based on Spaw's admission in its supplemental answers to interrogatories, which were filed five days before the trial was set to resume and prevented the City from filing an earlier motion. The City also argues that Spaw's arguments were not raised until the motion for a new trial, which is a significant factor that this Court should consider when determining whether the circuit court abused its discretion. Lastly, the City argues, even if the circuit court erred in failing to provide Spaw with time to respond to the motion for summary judgment in writing, this Court should hold that it was a harmless error since it was not prejudicial. The City's contention is that no response that Spaw could have provided, if it were given more time, would have overcome its admission that it removed and replaced windows without a Certificate of Approval.

We must determine whether the circuit court abused its discretion in refusing to grant Spaw's motion for a new trial and motion to alter or amend judgment in light of the newly amended Rule 2-501. It is well settled that the trial court has plenary discretion to grant or deny a motion for a new trial. *See Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 57 (1992). In *Buck*, we examined this at length and stated,

> The question whether to grant a new trial is within the discretion of the trial court. Ordinarily, a trial court's order denying a motion for a new trial will be reviewed on appeal if it is claimed that the trial court abused its

48

discretion. However, an appellate court does not generally disturb the exercise of a trial court's discretion in denying a motion for new trial.

*Id.* at 57 (quoting *Mack v. State*, 300 Md. 583, 600 (1984)). Similarly, a motion to alter or amend a judgment is reviewed for abuse of discretion. *Miller v. Mathias*, 428 Md. 419, 438 (2012) (quoting *RRC Northeast, LLC v. BAA Md., Inc.*, 413 Md. 638, 673 (2010)). We have explained the Court's review for an abuse of discretion as follows:

> We have defined abuse of discretion as "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Jenkins v. City of College Park*, 379 Md. 142, 165 (2003) (emphasis not included). *See also Garg v. Garg*, 393 Md. 225, 238 (2006) ("The abuse of discretion standard requires a trial judge to use his or her discretion soundly and the record must reflect the exercise of that discretion. Abuse occurs when a trial judge exercises discretion in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law.") (quoting *Jenkins v. State*, 375 Md. 284, 295–96 (2003)).

*Neustadter v. Holy Cross Hosp. of Silver Spring, Inc.*, 418 Md. 231, 241 (2011) (quoting *Touzeau v. Deffinbaugh*, 394 Md. 654, 669 (2006)). Under the abuse of discretion standard, "[s]o long as the Circuit Court applies the proper legal standards and reaches a reasonable conclusion based on the facts before it, an appellate court should not reverse a decision vested in the trial court's discretion merely because the appellate court reaches a different conclusion." *Id.* at 242.

In the middle of Spaw's two trial dates (December 17, 2014 and September 15, 2015), the amended Rule 2-501 came into effect (on July 1, 2015), which states, "A motion for summary judgment may not be filed: (A) after any evidence is received at trial on the merits, or (B) unless permission of the court is granted, after the deadline for

dispositive motions specified in the scheduling order entered pursuant to Rule 2-504(b)(1)(E)."

In the Rules Committee's One-Hundred Eighty-Sixth Report, the Committee acknowledges that Rule 2-501 was amended to address a matter that arose in *Beyer v. Morgan State*, 369 Md. 335 (2002). In *Beyer*, this Court stated that an oral motion for summary judgment was permitted since there was nothing in the current Rule 2-501 prohibiting it. *Beyer*, 369 Md. at 359. Consequently, the Rules Committee provided four justifications for changing Rule 2-501 prior to trial. First, the Rules Committee stated that motions for summary judgment are historically filed prior to trial to prevent "the necessity and expense of preparing for trial on the merits when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." Second, the Rules Committee stated that the due process rights of the party against whom the motion is filed will be protected by the proposed changes since the party will have fair notice and the opportunity to defend. Third, other motions are available to the parties if during the course of trial a party becomes entitled to judgment (e.g. Md. Rule 2-519). Lastly, the Rules Committee stated that it may become unclear what evidence the court should consider in deciding a mid-trial motion for summary judgment.

The Order accompanying all of the Rule amendments, states, in relevant part, "[A]ll . . . Rules changes hereby adopted by this Court shall govern the courts of this State and all parties and their attorneys in all actions and proceedings, and shall take effect and apply to all actions commenced on or after July 1, 2015 and, insofar as practicable, to all actions then pending[.]"

50

Spaw's contention that a new trial was warranted rests on the timing of the City's motion for summary judgment since the court received evidence on the merits. As we stated in *Woznicki*,

> The question of whether a trial court's grant of summary judgment was proper is a question of law. Pursuant to Md. Rule 2–501(f), summary judgment is proper where there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. To establish a genuine issue of material fact, a "party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. In other words, the mere existence of a scintilla of evidence in support of the plaintiff's claim is insufficient to preclude the grant of summary judgment; there must be evidence upon which the jury could reasonably find for the plaintiff."

443 Md. at 118 (quoting *Butler v. S & S P'ship*, 435 Md. 635, 665–66 (2013)).

While a mid-trial motion for summary judgment is no longer permitted under amended Rule 2-501, it was not practicable for the court to follow the amended Rule in this case. Spaw obstinately refused to participate in discovery so the City could not have filed a motion for summary judgment sooner. Spaw did not respond to the interrogatories prior to the first day of trial, on December 17, 2014. As a result, the court ordered Spaw to respond to the City's interrogatories. Spaw responded to the interrogatories on February 6, 2015, by stating that the interrogatories were irrelevant, overly broad, and denying that it replaced any windows. Then four days prior to trial was set to resume, on September 11, 2015, Spaw supplemented its interrogatories admitting that nine or ten windows were replaced at the Property. The City's motion for summary judgment was filed on September 14, 2015, the eve of the second trial day, and was solely based on Spaw's supplemental interrogatories, which were filed four days prior to the second day

of trial. Therefore, the court did not abuse its discretion since it was not practicable for the City to file its motion for summary judgment any sooner.[12] Thus, the court properly denied Spaw's motion for a new trial or to amend the judgment.

We are also unpersuaded by Spaw's arguments for two reasons. First, Spaw asserts that if it were permitted to properly defend the motion for summary judgment that it would have presented ample sworn evidence to demonstrate the existence of a genuine dispute of material fact. This is unpersuasive. Spaw was prepared to proceed to trial on the day that the motion for summary judgment arguments occurred. Spaw's counsel could have summarized the evidence that it was prepared to present that demonstrated a genuine dispute of material fact. However, Spaw did not raise any issue of material fact during its response at trial to the City's motion for summary judgment. In fact, Spaw still did not raise any issue of material fact in its memorandum in support of its motion for a new trial or to amend the judgment or before this Court. Rather, Spaw's counsel focused on the number of windows in its admission to mitigate the number of violations in both its oral response to the City's motion for summary judgment, in Spaw's motion for a new trial or to amend the judgment, and before this Court. When the court granted the motion for summary judgment, it was undisputed that Spaw violated the law, as alleged, by replacing vinyl windows without a Certificate of Approval. We cannot think of any evidence, nor does Spaw present any in its briefs, that Spaw could have presented to create a genuine dispute of material fact once it admitted to replacing windows without

---

[12] Furthermore, on December 17, 2014, the newly amended Rule was not in effect. If the Rule had been in effect, then the court could have postponed the first day of trial until after Spaw complied with discovery.

the Commission's approval. This case was about the replacement of windows. Once Spaw admitted to replacing the windows, there was not anything to litigate.

Lastly, we are also unpersuaded by Spaw's due process argument.[13] We have stated that the context and chronology of the particular circumstances of a mid-trial motion for summary judgment may implicate issues of fair notice and opportunity to defend for the nonmoving party. *See Beyer v. Morgan State Univ.*, 369 Md. 335, 359 n.16 (2002). However, as we stated in *Beyer*, such concerns were not expressed clearly in Spaw's response at trial to the City's motion for summary judgment argument or before this Court. *Id.* In this case, Spaw received notice, albeit the day before the hearing, and had the opportunity to respond to the City's motion for summary judgment. We hold that in this case that was sufficient. For these reasons, we hold that the circuit court properly exercised its discretion in denying Spaw's motion for a new trial, or in the alternative, motion to alter or amend the judgment.

## F. The Relief Granted by the Circuit Court

The last issue is whether the circuit court improperly granted broad injunctive relief to the City when it ordered Spaw to submit an after-the-fact application for a Certificate of Approval. As we stated, this Court will not set aside the judgment of the trial court unless its findings are clearly erroneous. *Goff*, 387 Md. at 338. Spaw contends that the judgment should have been limited to the number of windows it admitted to replacing. The City contends that the circuit court's judgment was appropriate since

---

[13] Spaw's argument is limited to the following sentence within its brief: "These circumstances implicate issues of fair notice and the opportunity to defend, and Spaw's due process rights were violated."

Spaw admitted to replacing windows without a Certificate of Approval.  The circuit court's judgment was not clearly erroneous.  Therefore, we affirm the judgment of the circuit court.

Spaw contends that the relief available is limited to abatement of infractions the City proves by clear and convincing evidence.  Spaw states that that the City did not prove by clear and convincing evidence that it replaced *all* of the windows—it only proved the replacement of approximately 10 (of the 186 windows) through Spaw's supplemental interrogatories.  As a result, Spaw contends, the circuit court could only grant relief for the nine or ten windows that the City proved were replaced.  Spaw states the circuit court's order awarded broad injunctive relief, which exceeded the statutory limits of relief available for a municipal infraction.  Additionally, Spaw states that it was not required to submit an application for the existing historic preservation violations on the property at the date of purchase, so the circuit court's order should have been narrower.  Lastly, Spaw contends that the City should have sought injunctive relief instead of issuing municipal citations for the abatement of all of the windows.

The City's contention is that the circuit court's Order requires Spaw to comply with the appropriate administrative procedures—to file an application for a Certificate of Approval with the Commission and not, as Spaw contends, to remove and replace all of the windows.  As a result, the City contends, the Commission will make the determination of the merits after an administrative hearing where Spaw and members of the public can participate.

After the circuit court granted the City's motion for summary judgment, Spaw asked the court to clarify its ruling. The following exchanged ensued:

COUNSEL FOR SPAW: [I]f the court is making a finding no limitations apply, and there is nine to ten violations (sic), that the extent of the abatement for the application for Certificate of Approval be confined to the findings of Your Honor, that there was nine to ten infractions.

THE COURT: Well, I think that all I'm finding is that there was at least one infraction. And they have to go through the process. And then, as [the City] indicated, [it] would be up to the Historic Preservation Commission to determine if there are others, to do a regular investigation in the ordinary course. And then if there are issues, then you can seek judicial review. Because –

\* \* \*

COUNSEL FOR SPAW: Right. But as far as Your Honor's ruling, with regard to the finding under municipal infraction, just trying to seek some clarity as to specifically what the violation or infraction is –

THE COURT: I'm ruling that there is no dispute of material fact as to whether an infraction existed. That in fact, a window, wooden window was removed and replaced with a vinyl window by the person who has owned (sic) the property during the relevant time period.

COUNSEL FOR SPAW: But as far as the abatement portion of it –

THE COURT: Well, I'm not ordering . . . anything, other than going to the Commission to do the regular process when they have an infraction . . . . So, my order would not address the number of windows. Because I haven't had testimony on whether there are other windows. But there's at least one window.

COUNSEL FOR SPAW: Well, and, Your Honor, and that's why – again, going back, that there are material issues in dispute. Because essentially, they have obtained injunctive relief for infractions that they haven't proved beyond nine and ten. But I guess that's the –

THE COURT: But isn't that the Historic Preservation Commission's job to determine –

\* \* \*

55

COUNSEL FOR SPAW: Your Honor, we're here because the City filed a municipal infraction, and they have to prove violations by clear and convincing evidence.

THE COURT: And your admission proves that, there's an infraction.

COUNSEL FOR SPAW: For nine to ten windows, Your Honor.

THE COURT: That's all they need to have . . . . [B]ecause this is not a Petition for Judicial Review of an Order from the Historic Preservation Commission that you have to fix this many windows, or do this, that, or the other. This is simply their request for you to go through the process. I don't think it matters if there's one window or a hundred windows . . . . They have to go through the process in order for you to get to a point whether you have relief that you seek to appeal.

The order issued by the circuit court states, "[Spaw] shall submit an application for a Certificate of Approval to the Historic Preservation Commission of the City of Annapolis . . . for all wood windows removed and all vinyl windows installed in the building which [Spaw] owns . . . ."

We hold that the relief granted by the circuit court was appropriate. As we discussed in our analysis of the other issues, the City has the authority to issue citations for historic preservation municipal infractions and to pursue abatement. Here, the City did not seek abatement in the form of requiring removal of all of the windows, but rather sought to abate Spaw's violation of not applying for a Certificate of Approval. Spaw's application for the Certificate of Approval may be for 10 windows or for 186 windows. The circuit court's judgment did not express the exact number of windows to be included in the application and we refuse to do so as well. If there is at least one window replacement, then a Certificate of Approval is required and only Spaw has the knowledge

56

to quantify and record on the application the replacement of windows that Spaw "willfully perform[ed] or allow[ed] to be performed[.]" ACC § 21.56.120.

The court's order simply requires Spaw to go through the administrative process, which it should have done before replacing the windows. Once Spaw submits its after-the-fact application for a Certificate of Approval there will be a hearing on the application. The Annapolis Historic Preservation Commission has Rules of Procedure that explain the process. Annapolis Historic Preservation Commission Rules of Procedure, https://perma.cc/69AJ-UH59. According to these Rules, after an application is received the Chief of the Commission is required to determine whether a submitted application is sufficiently complete. Annapolis Historic Preservation Commission Rule of Procedure ("Commission Rule") 2.1. If the application is determined to be incomplete, the Chief of Historic Preservation "shall advise the applicant of the necessary information that remains outstanding and provide the applicant with the opportunity to amend the application." *Id.* In the event that there are concerns of the completeness of the application, "[s]taff may present arguments for or against a determination of completeness." Commission Rule 3.8(a). By majority vote, the Commission shall determine if the application is complete. If the application is determined to be incomplete, a list of required additional material and a date certain for submissions and a new hearing are set." *Id.* The Chair of the Commission "shall impose reasonable time limitations on argument, and, although formal rules of evidence shall not apply, the Chair may also impose reasonable limitations on the introduction of evidence. *Id.*

57

If the Commission determines that the application is complete, then a hearing will occur to determine whether the Commission should approve or reject the application. *See* Commission Rule 3.8. The Commission can also impose conditions or ask the applicant to amend the application. Commission Rule 3.8(g). The Commission Rules permit applications to be rejected and returned to the applicant(s) if:

> (a) Planning and Zoning Department rules that the project cannot be authorized because of code or zoning restrictions;
> (b) the application does not include all the information required for commission review; or
> (c) an outstanding historic preservation ordinance violation on the property has not been abated.

Commission Rule 2.1. The Rules also state that "[t]he applicant has the right to appeal the determination of an application as incomplete and present it to the full Commission for a ruling." *Id.* Thus, Spaw has the burden of applying for the Certificate of Approval and has the burden of identifying the exact number of windows to be included in its after-the-fact application for a Certificate of Approval. The Commission will then review the application to determine whether it is complete and whether it should be approved.

Once Spaw submits its application and the Commission acts, then Spaw has the right to appeal the Commission's determination. Spaw cannot short-circuit the administrative process by asking the Court to substitute its judgment and make a determination of completeness or to pre-approve the application. This Court's role is not to limit the broad authority the statute affords the Commission in the Certificate of Approval process.

58

Our analysis concerning the exact number of windows replaced might be different if a fine was imposed for each window that was in violation of the ordinance. However, that is not the case here. Accordingly, this Court affirms the circuit court's order requiring Spaw to revert back to the original process and to submit an after-the-fact application for a Certificate of Approval for the wood windows that were replaced without prior approval by the Commission.

## III

### Conclusion

We hold that historic preservation municipal citations are civil and in this case were not barred by laches or the statute of limitations set forth in CJP §§ 5-107, 5-101. The citations were also sufficient in this case to give Spaw adequate notice of its violations, and the circuit court's judgment was not clearly erroneous. Lastly, the circuit court did not abuse its discretion by denying Spaw's motion for a new trial or in the alternative to amend the judgment. Thus, we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.**